## Torian, et al. v. Fuqua.

(Decided May 4, 1917.)

### Appeal from Trigg Circuit Court.

1. Contracts—Restraint of Trade.—A contract, which is in general restraint of trade, is void, but an agreement ancillary to the sale of a business, in partial restraint of trade, is enforcible, if the agreement does not prohibit the party selling the business from engaging in the business, at all, and the restraint is not so great as to deprive the country of the benefits following the conduct of such a business.

2. Contracts—Restraint of Trade.—If the restrictions imposed by the contract in restraint of trade, where the contract is ancillary to the sale of a business, is no more extensive than is reasonably required to protect the vendee of the business from competition

at the hands of the vendor, and is not so extensive as to affect the interests of the public, the restrictions are reasonable and will be enforced.

3. Contracts—Restraint of Trade.—Contracts in restraint of trade, are not favorites of the law, and before they are upheld, it must clearly appear that they do not impose any unreasonable restraints upon trade.

DENNY B. SMITH, M. M. HANBERRY and G. W. RYAN for appellants.

G. P. THOMAS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellants, T. K. Torian and C. R. Sumner were partners and owned a stock of furniture and undertaker's supplies at Cadiz, in Trigg county, which they sold to the appellee, T. H. Fuqua. The following writing was executed by Torian and Sumner and delivered to Fuqua upon the day the contract was made:

"We have this day sold to T. H. Fuqua our furniture & undertaking business at on the following terms. What goods we have in house at 1.15 on the $1.00 (wholesale or cost price no carriage added). What goods bought by us & not yet received at cost & carriage. Hearse at cost and carriage. We obligate ourselves individually and as a firm not to engage in furniture or undertaking business so long as said Fuqua or any firm in whom said Fuqua is interested in is doing business in the town of Cadiz, Ky. In consideration of the above trade we have accepted said Fuqua's check for $100.00 on trade, the balance to be paid in cash when invoice is taken. This 14th day of April, 1914.

"TORIAN & SUMNER."

About the following January, Torian and Sumner again entered into the business of selling furniture and undertaker's supplies in Cadiz. This action was instituted by Fuqua against them, by which, he sought an injunction to prevent them from the further continuance in the business and the recovery of damages against them for the alleged violation of the contract. Torian and Sumner answered and set up as a defense that the contract was against public policy, and placed an unreasonable restraint upon the right to trade and do business upon their part, and further claimed that at the time the writing was signed, which embraced the contract, that they understood that they were not to engage in a business

of that character only so long as Fuqua should be conducting the business in the name of Fuqua or Fuqua and Company, and that before they again entered into the business Fuqua had ceased to do business in his own name or as Fuqua and Company, and had entered into a partnership with others and was conducting the business of selling furniture and undertaker's supplies under the partnership name of Shaw, Fuqua & Co. They set up as a further defense that it was a part of the contract for the sale of their stock of merchandise to Fuqua, that Fuqua was to employ Sumner at a salary of twenty dollars per month for the remainder of the year and for three years thereafter, and should in addition to the salary permit him to engage in the business of a cobbler in the building in which the business was carried on, at such spare times, as he was not required to be attending to the duties as an employe of Fuqua, and that Fuqua had prepared a writing embracing the contract to that effect, but which he did not subscribe, but which he fraudulently induced Sumner to accept, and that Sumner was without knowledge of the fact, that it had not been subscribed by Fuqua, until the end of the year, when Fuqua claimed that he had no contract of that kind with Sumner and discharged Sumner from his employment, and that the contract being within the statute of frauds and not enforcible by Sumner, because it had not been signed by Fuqua, and by reason of this fraud perpetrated upon Sumner, that the contract sued on was not enforcible. These grounds of defense by Torian and Sumner were all denied by the replies of Fuqua.

The contract sued upon was prepared by Fuqua himself, and was signed by Torian for the partnership of Torian and Sumner. Neither party alleged or claimed that anything was left out of the writing upon which the action was based by either fraud or mistake or asked for any reformation of it to conform to their claims. The writing was filed with and made part of the petition by Fuqua, who, also, testified that it was in exact accordance with the contract which had been entered into between them, and that nothing had been omitted from it for any reason.

It appears conclusively from the evidence that the writing sued upon was read over by Torian in the presence of Sumner before it was signed and the only reason given by Torian for executing the contract, when it contained the stipulation, that he and Sumner were not to

engage in the furniture or undertaker's business so long as Fuqua alone or in connection with others was engaged in such business in Cadiz, instead of the stipulation, that they were not to engage in the business so long as Fuqua conducted the business alone or with his then associates, was because he had read it hurriedly or was induced from the actions of Fuqua to believe that the writing contained the agreement as contended for by them. With regard to the contract for the employment of Sumner, Fuqua contended that it was a separate contract and had no connection with the one made for the purchase of the goods and was entered into on the afternoon of the day, in the forenoon, of which the contract sued on was entered into. Although the unsigned writing, which Fuqua delivered to Sumner, was in exact accordance with the terms of the contract for the employment of Sumner, and although Sumner worked for Fuqua until the end of the year from the making of the contract, in April, without any other contract between him and Fuqua, Fuqua gives no better reason for the discharge of Sumner, at the end of the year, than that the agreement was, that, he was to employ Sumner for three years thereafter, if he should want him, and that he had left out of the writing, which he had prepared himself and delivered to Sumner, the condition, that he was to only employ him for the three years thereafter, if he should want him. As to whether or not, however, the contract between Fuqua and Sumner for the employment of the latter was a part of the consideration for the sale of the goods and business of Torian and Sumner to Fuqua was a question to be determined from the weight of the evidence and it cannot be said that the chancellor was in error in adjudging that it was a separate and independent arrangement from the contract sued on.

Hence, it appears that the claim of Torian and Sumner, that the terms of the writing sued on should have only restrained them from engaging in the character of business which they had sold to Fuqua for such a time as Fuqua should be engaged in such business by himself or as Fuqua and Company, seems to be without merit, as there is no allegation on their part that the writing failed to contain the agreement, as they contend, by any fraud or mistake.

The contention, however, that the contract as embraced in the writing, and which is sought to be enforced, as written by the appellee, is void as against public pol-

icy, presents a more serious question. A contract, which is against public policy, because its terms impose an unreasonable restraint upon trade, is void, and hence, it is void for all parties and for all purposes. The ancient rule rendered all, contracts in restraint of trade, void, whether the restraint was great or limited in its effect, but, according to the well-established doctrine, in this state, a contract, which is in general restraint of trade or which imposes restraints, which are unreasonable, are void, but an agreement, in partial restraint of trade ancillary to the sale of a business and which is reasonable in other respects, is not void, but enforcible, if the agreement has two indispensable conditions, one of which is that the party selling the business must not be prevented by the contract from engaging in the business at all, and the other is that the restriction will not deprive the country of the benefits following his conduct of such a business. Hence, agreements in restraint of trade, which are ancillary to the sale of a business and which prohibit the vendor from engaging in the business, at a particular place, or for a designated time or with particular persons, are valid and enforcible, if the restrictions are reasonable. The restrictions upon engaging in a business, in such instances, are reasonable and will be enforced, if the restriction is no more extensive than is reasonably required to protect the vendee of the business, in whose favor the restraint is given, from the competition of the vendor of the business; and the restraint is not so extensive as to effect the interest of the public. Merchants Ice & Cold Storage Co. v. Rohrman, 138 Ky. 540; Barrone v. Mosely Bros., 144 Ky. 698; Linneman & Moore v. Allison & Yates, 142 Ky. 309; Gropp v. Perkins, et al., 148 Ky. 183; Breeding v. Tandy, 148 Ky. 345; Skaggs v. Simpson, 33 R. 410; Louisville Board of Fire Underwriters v. Johnson, 133 Ky. 797; Clemons v. Meadows, 123 Ky. 178; Stovall v. McCutchen, 107 Ky. 577; 6 R. C. L. 803; Sutton v. Head, 86 Ky. 156; Grundy v. Edwards, 7 J. J. M. 368; Turner v. Johnson, 7 Dana 439; Pyke v. Thomas, 4 Bibb 486; Western, etc., v. Hobson, et al., 96 Ky. 550; Davis v. Brown, 98 Ky. 475; 9 Cyc. 526; Nickell v. Johnson, 162 Ky. 520. The contract asked to be enforced in this action, conceding that it is ancillary to the sale of a business, and the time within which the restraint is imposed upon appellants not to engage in a similar business so long as appellee is engaged in such business, either alone or in connection with others, in Cadiz, is not

unreasonable, as to the time of the restraint, if the restraint should apply within certain limits, only; but the contract, according to its plain terms, restrains them from engaging in such a business any where while appellee is conducting or interested in such a business in Cadiz. It thus appears, that the appellants are deprived of the right to engage in such a business, at all, at any place, while appellee is engaged in such a business at Cadiz, and the country is deprived of any benefits which might arise from their conducting such a business at any place. Such a restraint is unreasonable in a contract with reference to such a business according to all of the authorities. This restraint prohibits them from engaging in the business in the county, in which, Cadiz is situated or for that matter, in the state at large, and at points clear beyond where their engaging in such a business would be in competition with the appellee. The limit of the restraint would probably extend beyond the lives of either appellants, and in such case it would be the same as to restrain them during life, at any place, from engaging in such a business. Hence, the contract was void as against public policy, and the court below erred in decreeing its enforcement. Contracts in restraint of trade have never been considered as entitled to any special indulgences in the administration of the laws, and before they are upheld it must clearly appear that they do not impose any unreasonable restraint upon trade, as such restraint can only tend toward the creation of monopolies.

The judgment is, therefore, reversed and the cause remanded for proceedings consistent with this opinion.