## Thomas W. Briggs Company v. Mason.

(Decided December 17, 1926.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Contracts—Contract Restraining Employee from Engaging in Competitive Business Reasonably Necessary to Protect Employer, and Not Unreasonably Restricting Employee, Held Valid.—Contract prohibiting employee coming in personal contact with employer's customers from engaging in competitive business within limited time and area is valid, where restraint on employee is reasonably necessary for protection of employer's business and does not unreasonably restrict rights of employee, and where not against public policy.

2. Contracts—Contract Restraining Employee from Engaging in Competitive Advertising Business in Any City or State in which he Worked for Two Years Held Reasonable.—Contract by salesman not to engage in competitive advertising business of employer in any city or state within which he had worked for employer for period of two years after termination of employment held reasonably necessary to protect employer, considering nature of business.

3.   Contracts—Business of Employer Must be Considered in Determining Validity of Contract Restraining Employee from Engaging in Competitive Business.—Validity of contract prohibiting employee from engaging in competitive business after leaving employment must be considered with reference to business of employer.

4.   Contracts—Contract Restraining Employee from Engaging in Competitive Business is Reasonable if Confined to Territory in which Employer Carries on Business.—Territorial limit in contract restraining employee from engaging in competitive business on leaving employment is reasonable if it is confined to territory in which employer keeps his market or carries on his business.

5.   Injunction—Petition Averring Employment Terms of Contract Prohibiting Employee from Engaging in Competitive Advertising Business and Breach Thereof Held Sufficient.—Petition to restrain employee from violating contract not to engage in competitive advertising business with employer, averring employment, terms of contract, and breach within terms, held to state cause of action.

BURNETT, BATSON & CARY for appellant.

PETER, LEE, TABB & KRIEGER for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Shall appellee, Mason, be enjoined from violating the terms of a written agreement with appellant, Briggs Company, by which he engaged to do work for that company and agreed that upon the termination of his employment, by act of either party, and for two years thereafter, he would not engage, directly or indirectly, in the same or similar business in any city or state where and within which he had worked for appellant under the contract, is the question we have for decision.   The Thomas W. Briggs Company, a Memphis concern, entered into a written contract with appellee, Mason, on April 18, 1922, whereby it employed Mason "in the capacity of department or crew manager and as solicitor or salesman in its business of selling and soliciting advertisements and publicity, and especially in putting on special advertising, weekly business review pages, book campaigns, historical and biographical publications, and other and general publicity and advertising specialities, through and from leading newspapers, magazine and periodicals throughout the United States," agreeing to pay him certain commissions upon work accomplished, the contract to remain in force only so long as it is the mutual desire of the parties.   Either party could terminate it at will.

Pursuant to the contract Mason entered the employ of appellant company and continued therein until about the time of the commencement of this action in May, 1926, when he, claiming to need a rest, asked for a vacation and immediately thereafter organized a similar business to that of his former employer, and entered into a contract with the Courier Journal at Louisville, in which he was to do for the Courier Journal work of the same nature as that which he had been doing for it pursuant to a contract theretofore made by the Briggs Company with it for the getting out of a special edition of that newspaper, in violation of the terms of a written contract. The Briggs Company instituted this action against appellee, Mason, praying an injunction restraining him from carrying out his contract with the Courier Journal to put on a special advertising edition of that newspaper, and restraining him from engaging in the same kind of business and work as that conducted by appellant, Thomas W. Briggs Company. A restraining order was issued by the clerk and continued in force by the chancellor to the extent of restraining appellee, Mason, from making or taking new contracts for work similar to that of appellant, Thomas W. Briggs Company, in violation of his contract, but not enjoining him from carrying out his contract with the Courier Journal. To that order both parties objected and excepted, and obtaining time for the purpose, each made a motion before a member of this court, one for injunction restraining appellee from carrying out his contract with the Courier Journal, and the other to dissolve the order restraining Mason from carrying on a business similar to that of appellant company. On hearing both motions were overruled and the matter referred to the chancellor for preparation and decision upon the merits. On final hearing the chancellor sustained a general demurrer to the petition, dissolved the injunction and finally dismissed the cause, when appellant company declined to further plead. From that judgment this appeal is prosecuted.

The written contract between the parties, insofar as it is relevant, reads:

"Whereas, the party of the first part is engaged in the business of selling and soliciting advertisements and publicity, and especially in putting on special editions, weekly business review pages, book

campaigns, historical and biographical publications, and other and general publicity and advertising specialties, through and for leading newspapers, magazines and periodicals throught the United states and . . .

"4. Party of second part agrees and binds himself to conduct each campaign of which he is assigned as manager in a high class manner, to give to it his undivided time and his moral support; to employ solicitors only of good repute, sobriety and integrity; that he will conduct himself at all times as a gentleman; and, further, that he will observe the rules and regulations and reasonable requirements of the party of the first part. . . .

6. "It is expressly agreed that upon the termination of this employment by act of either party and for a period of two years thereafter, the party of the second part will not engage, directly or indirectly, as employee, manager, proprietor or solicitor, for himself or others, in a similar or competitive business or the same character of work which he is here employed by party of the first part to do and perform in any city or state where or within which he shall have worked for party of the first part under this contract. . . .

7. "If the party of the second part should breach the good will clause of this contract (paragraph six) he will pay the party of the first part, as liquidated damages, the sum of $10,000.00 for each and every city in which he shall operate, it being agreed that sum is reasonable and just. . . .

11. "This contract will remain in force only so long as it is the mutual desire of the parties. Either party may terminate it at will."

Appellant company insists that appellee, Mason, wantonly violated his contract in making use of the business methods, good will, trade secrets and acquaintances with the *clientele* of the appellant to compete with it, and should be enjoined; and, further insists that an employer is entitled, under a convenant restraining an employee from competing against him, to protection against employee's use or knowledge of specific facts which he has acquired in his capacity as employee, such as knowl-

edge of the names of persons with whom his employer deals, trade secrets, business methods and good will.

In answer to these contentions appellee, Mason says that the restrictive agreement is unreasonable, unenforceable and void; that in order for a court to uphold a restrictive stipulation between an employer and employee it must find that the facts alleged disclose a restriction on the employee reasonably necessary for the fair protection of the employer's business or rights, and not unreasonably restricting the rights of the employee.

He further says that as a general rule equity will not interfere or restrain by injunction a violation of the restrictive covenant in relation to personal service, and that the one right of an employer in such matters is to protect himself against illegitimate competition.

Contracts have frequently been upheld whereby salesmen, agents, canvassers and other employees who come in personal contact with their employer's customers, agree not to engage in a competitive business in a limited time and area after leaving their employer's service. 13 C. J. 485. Such restraints, however, must not be wider or more stringent than reasonably required for the protection of the employer's business. Courts will uphold and enforce such restrictions, if not otherwise contrary to public policy, where it finds that the facts alleged disclose a restriction on the employee reasonably necessary for the fair protection of the employer's business or rights and not unreasonably restricting the rights of the employee, due regard being had to the interest of the public and the circumstances and conditions under which the contract is to be performed. Samuel Stores v. Abrahams, 9 A. L. R. 1450; 108 Atl. 541 (Conn.). Covenants of this character, though recognized to be in partial restraint of trade, are sustained where properly limited as to time and territory and are not otherwise against public policy, the test generally being whether the restraint is necessary for the protection of the business or good will thereof, the injury to the employee which must not be greater than is reasonably necessary to secure the business of the employer, or the good will thereof, regard being had to the injury which may result to the public, by restraining the breach of the covenant in the loss of the service and skill of the employee, and the danger of his becoming a charge upon the public being taken into due

consideration. 9 A. L. R. 1467; Mentor & Co. v. Brock, 20 A. L. R. 857, and notes; Clark Paper Co. v. Steucher, 29 A. L. R. 1325, and notes; 13 C. J. 485; 6 R. C. L. 805; 31 L. R. A. (N. S.) 225.

The chancellor, considering the demurrer to the petition, observed that "under the rule that a pleading is to be taken strictly against the pleader, the petition shows that plaintiff has (or had at the time of the breach complained of) only one 'customer' in Kentucky, the Louisville Courier Journal Company, that he has had only one transaction with the 'customer,' that the only work done by defendant in Kentucky as plaintiff's servant was in connection with that single transaction and that defendant has been guilty of no other breach of his covenant than that involved in his present contract with the Louisville Courier Journal Company."

Continuing the chancellor said:

"The later and, I think, the sounder doctrine with reference to covenants of this class is, not that a limited restraint is good, but that it may be good; that the restraint, to be good, must be limited to such reasonable protection as the employer is entitled to demand; that he is entitled to demand protection, not against competition *per se,* but only against unfair competition made dangerous by the use of weapons placed by him in his employee's hands during his service and which may be turned against him, such as the knowledge of trade secrets, receipts, formulas, processes or other confidential information, or an acquaintance with employer's customers and their requirements, resulting from the nature of the employee's services, which is regarded as a species of good will in which the employer has a sort of proprietary interest; that the skill and efficiency of the employee, even though gained in the covenantee's service and even knowledge so gained, if it relate not to employer's trade secrets or connections, are his own and not his employee's and, despite an undertaking to the contrary, may be used even in competition with the employer; that such knowledge and proficiency are at the employer's disposal only during the employment and the employer, in exacting of his employee an undertaking not to use them in competition with him 'is not endeavoring to protect what he has, but to gain a special advantage he could

not otherwise secure' (Younger, L. J., in Atwood v. Lamond); that the burden is on the plaintiff to show the special circumstances making the covenant necessary for his protection; that (as was said by Lord Shaw in Herbert Morris v. Saxelby, 32 Times L. R. 277) 'as the time of restriction lengthens or the space of its operation grows, the weight of the onus on the convenantee grows also; that even a restraint reasonable as to the employer's interest may be invalid because under the circumstances it is harsh and oppressive upon the employe or because it is injurious to the public.''

Appellee, Mason, agreed upon the termination of his employment with appellant company for whatever reason, not for two years thereafter to engage, directly or indirectly, as employe, manager, proprietor or solicitor for himself or others in a similar or competitive business in any city or state where or within which he had worked for appellant company under the contract. The question is, were these restrictions reasonable both as to the employer and employe, and were they against public policy for any reason? The business was a new and unusual one, employing special methods which constitute trade secrets. To the average person in the business world little or nothing is known of this new business much less the methods employed therein, organized and carried on by appellant company, and comparatively few people knew or suspected that there was such a field of endeavor in which one might train himself and launch upon a business such as appellant company conducted. Necessarily years of patient and careful study and attention were necessary to organize and develop such business and bring it to a point where it would be profitable. In its nature it could not be confined to narrow limits, nor could it hope to have a great number of customers or clients in any city or community, but the relatively few it had would give it large contracts, requiring the services of a number of people and yield a splendid profit or income. Such clients and customers were unlike the ordinary customer or client in the commercial world who frequently buys or calls for articles or services, but, on the contrary, are such as call but seldomly and make but few contracts, but such as they make extend over long periods and result in large profits. We may assume from facts developed in the record that appellee, Mason, had been en-

gaged in a wholly different business and had no knowledge of or insight into the business of appellant company, or business of like nature, or its trade secrets or business methods, until he entered into the contract which is the basis of this litigation. The employer, it would seem, under facts like these, has the right by contract to protect himself against the giving out of information concerning his business methods and trade secrets, and in order to do so the restriction on the employee, while it may not be wider than necessary for the protection of the employer, may be as broad as the employment or business, its nature and scope considered, both in purview and territory, else it would be of no protection, or an inadequate protection. As appellee was engaged as manager of the business and sent by appellant company into different cities to carry out contracts theretofore made by appellant with publishers and like concerns, he was put in intimate touch with all of appellant's *clientele* and customers and learned all of the intimate secrets of the business and how to carry it on, as indicated by his conduct in organizing a similar concern along exactly the same lines, to engage in precisely the same business, or the employment thereof, when he engaged himself to work for one of the customers of appellant company in a state and city to which appellee, Mason, had been sent by appellant to carry out a contract of like character. The period of two years in which appellant engaged not to go into a similar business can not be said to be too long, the nature of the contract and business considered, because this court as well as other courts have in certain cases held that one may engage not to enter a given business for a period of five years. Boone v. Burnham and Dallas, 179 Ky. 91; Torian v. Fuqua, 175 Ky. 428; Keen v. Ross, 186 Ky. 256; Linneman & Moore v. Allison & Yates, 142 Ky. 309.

It is, however, insisted that the territorial limits are entirely too broad and does not allow appellee, Mason, a fair chance to engage in a legitimate business in which he is trained, he being barred from entering the business "in any city or state where or within he shall have worked for the party of the first part under this contract." As appellant company could and would have perhaps only one client in a large city and but few in the whole state, the nature of the business considered, it would appear that restrictions of the kind above recited

are not unreasonable. Had the nature of the employment confined the operations of appellee, Mason, to one city or one state, it would have been sufficient to have restricted his operation to that territory, but inasmuch as the nature of the business was such that only a few persons had discovered it and had launched into it and there was room for but few such concerns, and they operating in the country at large, not being confined to any city or state, little or no protection would be afforded the employer if the stipulation against engaging in the business could be confined to narrow limits such as a single city or state, especially where the employee has engaged in similar work for the employer in cities outside of the territory and thus formed the acquaintance and come in close personal contact with the *clientele* of his employer and is for that reason in position to take advantage of all the trade secrets and business methods and *clientele* of his employer in such territory. In the case of Prame v. Farrel (1909), 166 Fed. 702, it was, in substance, held that a restraining covenant, unlimited both as to time and territory, will be construed with reference to the circumstances of the case, the nature and extent of the business, and the situation, object and interest of the parties; and when so construed, if it is clear that it was intended to apply only to the United States, it will be so construed and enforced.

There is and can be no denial that appellee, Mason, violated the terms of his contract by engaging directly in a business similar to that of his employer in territory in which his employer was actively engaged in business at the time of and during his employment, and in which by the terms of his contract he was not to work for a period of two years. Giving full force and effect to the established general rule that the restraint afforded the employer in whose favor it is imposed shall be only reasonably sufficient to protect him against something which he is entitled to be protected against and not unreasonably burdensome upon the employee as to time and territory and not against public policy as likely to throw the employee out of employment and thus make him a charge upon the public, we are constrained to hold that the restrictive clause in the contract before us could not have been of advantage to the employer had it been limited in territory to space less than that covered by the employment and to a period of time much less than that

fixed in the contract. In every case the validity of the contract must be considered with reference to the business of the employer, which it was the object of the negative provision of the contract to protect. If the restriction imposed is not wider than is reasonably required for the protection of the employer, regard being had for his business and its general scope and nature, it will be sustained. The territorial limit is reasonable if it is confined to the territory in which the employer keeps his market or carries on his business. While the business of the local groceryman might be confined to two or three city blocks and a restriction in a contract of employment of his clerks might not be enforceable if made to cover an entire city, the business of a broker operating throughout several states, or a mail order house actively selling throughout a large area might as to trade secrets and methods of business peculiarly their own, enforce a negative convenant with employees not to engage in similar business within the territory covered by the established business, depending upon the reasonableness of the application, if not otherwise violative of the rights of the employee or of the public. As the petition averred the employment, the terms of the contract, the breach by appellee, Mason, entering into the same line of work, establishing a business of his own for the accomplishment of the same objects as that of his employer in territory in which he was engaged by his employer to conduct the same character of business, we are of opinion that the demurrer to the pleading is not well taken and should have been overruled by the chancellor, for which error the judgment is reversed for proceedings consistent herewith.

Judgment reversed.