## McANALLY v. PERSON.

No. 9883.

Court of Civil Appeals of Texas. Galveston.

Feb. 16, 1933.

Rehearing Denied March 2, 1933.

Henderson & Copeland, of Houston (Devereaux Henderson and James A. Copeland, both of Houston, of counsel), for appellant.

Cole, Cole, Patterson & Kemper, of Houston (W. L. Kemper, of Houston, of counsel), for appellee.

LANE, Justice.

On the 11th day of June, 1932, S. J. Person, hereinafter referred to as complainant, filed in the Eleventh district court of Harris county his sworn application for an injunction to restrain F. McAnally, hereinafter referred to as respondent, from working either as deliveryman, solicitor, driver, or salesman in the ice business for himself or any other person, firm, association, or corporation, within the city of Houston, Harris county, Tex., and from the date of filing such application during the remainder of an unexpired term of about twenty-eight months of a three-year term provided for in a written contract executed by the parties, the material and pertinent parts of which are as follows:

"Agreement entered into between S. J. Person of the said County of Harris and State of Texas, doing business under name and style of Brazos Fuel & Ice Company; and F. McAnally of the said County, hereinafter called 'Employee,' Witnesseth:—

"That said Person is engaged in the business of selling, delivering and distributing ice in and around the City of Houston and in the said County of Harris, in the State of Texas, said sales and distributions being made by means of wagons, trucks and other vehicles as well as at the platforms of ice plants and at various stations established and to be established in the said County and by freight and express, and has employed the said employee as Ice-delivery man, etc., and agrees to pay said employee a weekly-monthly-wage in the sum of —— Dollars ($——) to be paid on —— of each week-month hereafter during the term of said employment.

"Said employee in consideration thereof does hereby agree to devote all of his working time and energy to the interests and business of the said Person and hereby agrees that he will to the best of his skill and ability use his best efforts and endeavors to the extension and promotion of the said business, to the procuring of new and further business, the proper servicing and holding of present business and the protection of the good will of the business of the said Person, both as now enjoyed and hereafter acquired. That any business secured or acquired by said employee during the term of this contract and while in the employ of said Person as Ice-man or in any other capacity that said employee may hereafter be employed by said Person, shall belong wholly to the said Person and to his heirs and assigns.

"It is expressly agreed that any re-employment of said employee from time to time, whether as such Ice-man or otherwise, shall be deemed as continuous employment, and is mutually recognized and accepted as a renewal of and ancillary to this contract without formal written renewal, and the provisions hereof and this contract are carried into such renewal or extension as fully to all intents and purposes as if new written contracts were entered into and executed. It is agreed that changes in the foregoing wage rate may be made by agreement without vitiating this agreement or the renewals thereof, and that such employment shall continue so long as mutually satisfactory to both parties hereto, provided the same may be cancelled and terminated by either party hereto upon —— days written notice of such intent.

"It is further agreed, for the considerations aforesaid, and for the protection of the said business and the securing of the good will of the said business of the said Person and because of the trusted and confidential employment of the said F. McAnally and in the event the said employee may hereafter leave the employment of said Person, or should this agreement terminate, or said employee cease to work for said Person; then said employee hereby specially agrees that he will not for a period of three years after the severance—for any cause—of said employment; either for himself or for any other person, firm, corporation or association, sell or offer for sale, canvass, solicit, deliver or offer, ice or ice service to any of the customers, trade or business of the said Person or enjoyed or served by said Person or his heirs or assigns at the time of the termination of such employment, that said employee will not use his knowledge of the business of said Person for the benefit of himself or any other person, that he will not divulge the business affairs or the names of customers, lists or descriptions of routes, names of employees, number or character, of contracts, prices, terms or particulars of the trade and business owned and enjoyed by the said Person, either by sale, gift or by any device, subterfuge or evasion and in all things will in good faith protect the good will of the said business and keep secure his knowledge of the said business and affairs of said Person acquired while in the employ and under the wage of said Person. * * *

"Witness the hands of the parties to two instruments of like tenor and date at Houston,

Texas, on this the 15th day of February in the year 1930."

A copy of such contract was attached to complainant's petition or application as an exhibit and made a part thereof.

The cause was transferred from the Eleventh to the Fifty-fifth judicial district court of Harris county.

Complainant alleged and the evidence shows that complainant had no ice factory but engaged in buying ice at wholesale and delivering at retail, more or less peddling, but sold ice to anybody in the city of Houston or Harris county that came to his platform to buy; that is, to the general public, and distributed it over the southern part of town. His only platform was located at 2817 Milam street. He had six other employees at the time respondent quit on the 28th of September, 1931, including among the six respondent's brother. He had been in this business several years.

Respondent went to work for complainant in October, 1929, and was employed as a deliveryman on the 1st of November, 1929, at regular wages. He worked on two of complainant's four routes and about every two or three days sold ice on the platform sometimes until about 7 or 8 p. m. He worked the routes as a rule by himself, driving complainant's truck and selling complainant's ice, working the whole year and not just during the ice season, with a steady job other than when off with an injury, having had an appendicitis operation and two hernias.

Complainant had personal contacts with the customers on the routes to the extent that for about four or five days when respondent first went to work for him, complainant relieved the deliveryman who preceded respondent and was taking a few days vacation; but he was not acquainted with each of the customers his drivers were and could not keep up with them. Respondent learned the route by working with complainant during this few days vacation time and during some three days a little later on, and was paid, like each other deliveryman, from the time he went on.

The contract herein sued upon was not executed at the time respondent first went to work for complainant in October, 1929, or even when he started as a deliveryman on the 1st of November. It bears date as of the 15th of February, 1930, and respondent admits having executed it. Had he refused to sign the contract, complainant would not have continued him in employment, because through respondent's personal contact with customers he might take them as his own, such deliveryman being in a good position to influence customers through seeing and waiting on them daily, and at times attempting to take the business they have been paid to wait on.

That the other employees executed contracts similar to the one executed by respondent; that when respondent quit the employment with complainant, on the 28th day of September, 1931, he started an ice business of his own in May, 1932, with his own truck, selling, delivering, and soliciting, within the same territory he had worked for complainant's customers he had at the time he was employed by complainant, running in competition with complainant; that he was "still running" though he had answered in this case; and that it was his purpose, if the court permitted him, to go ahead, as he had been, selling ice and soliciting what ice customers he could get for his own account and go along with the business.

Complainant alleged that unless the injunction prayed for was granted he would suffer irreparable injury, in the sum of $10,000; that respondent was insolvent; and that by reason thereof complainant was without an adequate remedy at law. He prayed for a temporary restraining order and upon a final hearing for the issuance of a permanent injunction enjoining respondent from breaching his covenants during the unexpired portion of the three-year period from September 26, 1931, to the date of the termination of his employment.

On said 11th day of June, 1932, Judge Ewing Boyd, judge of Fifty-fifth judicial district, upon complainant's petition ordered the issuance of a temporary restraining order, restraining respondent from working as deliveryman, solicitor, driver, or salesman in the ice business for himself, for any other person, firm, association, or corporation within the territory in the city of Houston, Tex., bounded by Smith street on the west, Texas avenue on the north, Dowling street on the east, and Tuam avenue on the south. An order was at such time entered ordering the clerk of the court to issue an order requiring the respondent McAnally to appear before Hon. Roy F. Campbell, judge of the Eightieth judicial district court, on the 17th day of June, 1932, to show cause why an injunction should not be granted upon the complainant's petition, effective until a final decree was entered in the suit.

On said 17th day of June, 1932, respondent filed in the Eightieth district court his answer to complainant's petition, praying for the dissolution of the temporary restraining order theretofore granted, and that no temporary injunction be granted upon complainant's petition, for the following alleged reasons:

First, because the contract entered into, pleaded by complainant, is null and void, in that it is in restraint of trade and in violation of the antitrust laws of Texas, and in violation of respondent's constitutional rights.

Second, that the consideration for the contract has wholly failed, in that it implied that complainant would continue to employ respondent at a regular weekly wage and com-

plainant has wholly failed so to do; that he breached the contract, and therefore he is not entitled to recover in this suit, in that during the spring of 1930, at the inception of the summer ice season, complainant, in order to cause respondent to exercise greater industry and activity in his work, agreed to amend the contract and pay to respondent 2 cents per pound on each 100 pounds of ice sold by him during such season; that under such agreement respondent earned $200 and complainant refused to pay the same.

Complainant by supplemental petition demurred generally to respondent's answer and made general denial of the allegations of such answer.

The cause came on for hearing on the Eightieth district court, in chambers, on the 22d day of June, 1932, and at such hearing the court rendered and caused to be entered an order in which it is recited that the pleadings of the parties having been heard by the court, together with the evidence adduced upon such hearing, "It is on this 22nd day of June, A. D., 1932, here now by this Court ordered, adjudged and decreed as follows: That defendant's Motion to dissolve Temporary Restraining order heretofore entered herein is overruled, and that pending a final determination of this cause, the defendant, F. McAnally, is hereby enjoined, either for his own account or as agent, servant or employee of any person, firm or corporation, from soliciting or canvassing for ice business and delivering ice, or engaging in the ice business in any manner whatsoever, within the territory included between Texas Avenue, St. Emanuel Street, Richmond Road and Baldwin Street, in the City of Houston, Texas, and defendant is also enjoined from selling or transferring or giving to anyone any alleged right he may claim to have acquired in the ice business located within said territory, and he is further enjoined from furnishing anyone any information as to said ice business, including names of plaintiff's customers residing within the same."

From the order so rendered and entered respondent has appealed.

■ By appellant's first and second propositions contention is made that the court erred in granting the temporary injunction, in that appellee did not specifically pray for such injunction.

We overrule such contention. By his verified petition appellee affirmatively alleged his performance of all things essential to be done and performed by him under the terms of the contract and relied upon the same for the issuance of the injunction granted. Such allegations disclosed such facts as authorized the issuance of such temporary injunction. There is no allegation from which it might be deduced that appellee might not, under other supposable facts connected with the subject, be entitled to such injunction. The evidence is amply sufficient to support all the allegations of the petition. Such allegations were followed by a broad prayer for injunctive relief upon final hearing and for such other and further relief, general and special, legal and equitable, to which he may show himself justly entitled.

In Harding v. W. L. Pearson & Co., 48 S. W.(2d) 964, 966, an opinion by the Commission of Appeals, it is said: "The rule is also well established in this state that the granting or refusing of a temporary injunction is within the sound discretion of the district court, and *that the court's action will not be disturbed on appeal, unless it clearly appears from the record that there has been an abuse of such discretion.*" (Emphasis ours.)

In Fort v. Moore (Tex. Civ. App.) 33 S.W. (2d) 807, 808, a case in which a question similar to the one presented in the present case was presented, the court said: "Our courts hold that, *although the defendant does deny under oath all the allegations contained in an application for a temporary injunction, it is still within the discretion of the trial court to grant a temporary injunction pending a final hearing on the merits of the case.*" (Emphasis ours.)

■ By appellant's third proposition he contends that the court erred in granting the temporary injunction, in that it was shown by the undisputed evidence that appellant had worked for appellee for several months before the contract pleaded by appellee was executed, and therefore the agreement of appellee to extend appellant's employment if appellant would sign the contract, and the execution thereof by appellant, would not and did not constitute sufficient consideration for the agreement of appellant to abide by the prohibitive stipulations in the contract; that the agreement of appellee to extend appellant's employment was, under the circumstances, only a negative covenant in regard to personal employment and it will not be enforced, there being "no mutuality of remedy in the contract."

We overrule the contention. While it is true that appellant had worked for appellee in various capacities for some months prior to the execution of the contract, his subsequent agreement, in consideration of further or extended employment, but to engage in the sale and delivery of ice for himself, or for any other person, firm, or association, etc., for three years in certain territory after ceasing in the extended employment, is supported by sufficient consideration, it being shown that appellant would have been discharged had he not signed the contract.

In Bettinger v. North Ft. Worth Ice Co. (Tex. Civ. App.) 278 S. W. 466, 469, it is said: "It is further urged that the contract shows upon its face to be unilateral, and such a contract will not support an action for specific

performance. We think that the contract imports a valuable consideration moving from petitioner to defendant, to wit, *the further employment of defendant.* Mr. Heeger testified that, while he did not tell the defendant at the time of the conversation with reference to the signing of the contract that, if the defendant did not sign the contract, he would be discharged, yet he told him that all of the employees had signed, or would have to sign, the contract, and he stated that, *if defendant had not signed the contract, he would have had to discharge him.* Moreover, this contract was entered into on March 1, 1924, and the parties thereto operated thereunder until September 17, 1925, when defendant voluntarily quit the employment of the plaintiff. *One cannot successfully plead a want of consideration, or unilateralness, in a contract which he has performed in whole or in part."* (Emphasis ours.) See Walker Coal & Ice Co. v. Westerman, 263 Mass. 235, 160 N. E. 801; Wark v. Ervin Press Cor. (C. C. A.) 48 F.(2d) 152; Richardson v. Webster-Richardson Pub. Co. (Tex. Civ. App.) 46 S. W.(2d) 384–387.

It was shown, as already stated, that appellant worked under the contract from its date, February 15, 1930, to the 26th day of September, 1931, a period of about one year and nine months, before his employment ceased.

■ By appellant's fourth proposition he contends that appellee failed by a preponderance of the evidence to establish the necessity for and the reasonableness of the restraint prayed for and granted as a protection of his business and the good will of same.

We overrule such contention. We think the facts proven, which we have hereinbefore stated, clearly established the necessity for and reasonableness of the restraint granted as a protection of appellee's business. American Ice Co. v. Lynch, 74 N. J. 298, 70 A. 138; Koenig v. Galveston Ice & Cold Storage Co. (Tex. Civ. App.) 18 S.W.(2d) 1099.

■ However, as stated in Kennedy v. Winfrey (Tex. Civ. App.) 163 S. W. 1018, 1019: "The law is well settled in this state that where a party admits the execution of an instrument, and then attempts to avoid it by showing a failure of consideration or otherwise, the burden is upon him to establish such defense."

In 10 Texas Jurisprudence, page 225, second paragraph of section 132, it is said: "Where the circumstances appear on the face of the contract, the court will determine the reasonableness of the restriction as a matter of law; if they do not so appear, the contract will not be presumed to be illegal, *but the party seeking to avoid liability under it must plead and prove facts* which make it unlawful." (Emphasis ours.)

By appellant's fifth and sixth propositions he contends that the evidence raised the issue as to whether appellee had breached the contract before it was breached by appellant, thus creating a substantial doubt as to whether appellee would be entitled to the relief sought, therefore the court erred in granting the temporary injunction before a trial on the merits of such issue.

■ We overrule such contention. Appellant insists that appellee breached the contract, first, by changing the scale of wages pending appellant's employment; second, that he breached it by terminating appellant's employment; and, third, by failing to pay appellant a bonus of $200 which he had earned under an oral agreement made by and between appellee and his ice salesmen.

That the wage scale might be changed and appellant's employment canceled at the option of appellee without violating the provisions of the contract is expressly provided in the contract in these words: "It is agreed that changes in the foregoing wage rate may be made by agreement without vitiating this agreement. * * * The employment of appellant shall continue as long as mutually satisfactory to both parties, and such employment may be canceled and terminated by either party to the contract upon —— days written notice of such intent."

It is, therefore, clearly apparent that appellee did not breach the contract by making a change in the wage scale, nor by terminating the contract, there being no contention that the required notice was not given.

■■ We now come to consider appellant's contention that appellee breached the contract by his refusal to pay appellant $200 which he alleged he earned under the terms of an oral bonus contract.

If it be conceded that such contract was consummated, which is not done, its breach by appellee would not constitute a breach of any provision of the contract of date February 15, 1930. All the evidence shows that, if such bonus agreement as alleged by appellant was ever entered into, it was an entirely separate contract in no way connected with the former contract. If, however, we are in error in the conclusions just expressed, there can be no doubt that there was sufficient evidence to support a finding that such alleged bonus agreement was never consummated and that, if it was, appellant never earned anything under it.

Appellee, S. J. Person, testified that he never made any agreement with appellant to pay any such bonus as appellant testified was made; that appellant made no demand upon him for a bonus until after this suit was filed; that he never sold 1,000,000 pounds of ice.

W. I. Moore testified that he was employed by appellee in the capacity as route foreman

ór superintendent; that at the beginning of the summer season he and appellee talked with their ice salesmen relative to a bonus; that the proposition contemplated was one to encourage the salesmen to exercise greater industry in their work; that the suggestion was that, if the salesmen would sell 1,-000,000 pounds of ice in one season and return to appellee the proceeds of such sales, appellee might pay such salesmen 2 cents bonus on each 100 pounds of ice sold by him, but that such contemplated agreement was never agreed upon by the parties; but if it had been agreed upon, appellant never earned anything under it, as he never sold 1,000,000 pounds of ice, and in several instances he failed to return the money for some sales he made.

■ It was the prerogative of the trial court in this case to determine the issue on conflicting evidence, and since he has done so in favor of appellee upon sufficient evidence to support such determination, this court is without authority to set the court's finding aside.

Appellant alleged, and sought upon the trial to show, that at the time this suit was filed he was earning in his ice business $1.50 per day; that he was a man without means except money as he could earn by hard labor; that he was a man of family, composed of a wife and four children; that the issuance of the temporary injunction prayed for before trial on the merits rendered him a pauper and a subject of public charity, and under such pleadings and proof he insists in this court that the trial court erred in refusing to apply the equitable doctrine of the balance of convenience and damages in this case.

■ We overrule the contention. The case as made by appellee by pleadings and evidence shows that he has complied with all the requirements of law for the issuance of an injunction, which entitles him to the injunction granted as a matter of right. The case is not one where the equitable doctrine of the balance of convenience applies.

In Burrell v. Michaux (Tex. Com. App.) 286 S. W. 176, 181, it is said: "It has often been held that where the issuance of an injunction will cause great injury to defendant and will confer little or no benefit in comparison upon complainant, the writ will be refused, and, conversely, where a wrong against complainant is clear, and his injuries great, the writ will issue, notwithstanding it will produce some hardship upon the defendant. Nevertheless, it is also clear that *where there is a violation of a plain right of the complainant and his injury is regarded as irreparable, he is ordinarily entitled to an injunction, even though the injury is relatively small as compared with the injury which the defendant will suffer as a result of the issuance of the writ.* 32 C. J. p. 78, § 64." (Emphasis ours.)

The evidence in this case shows that unless the injunction sought is granted, appellee will suffer irreparable injury and damage. It shows appellee's right and the violation of such right by appellant. It shows not only injury to appellee, but also danger of continuing injury in the absence of the writ.

We are of opinion that under the evidence the plea of appellant undertaking to prevent the issuance of the temporary injunction upon the equitable doctrine of balance of convenience has no place in this case.

■ We now come to a consideration of appellee's cross-assignment by which appellee insists that the court erred in refusing to grant him a temporary writ of injunction covering the entire city of Houston.

In refutation of appellee's contention, we quote from his brief as follows: "Even if the territory described in this contract were unreasonably extensive, contracts which might for that reason unreasonably restrain trade, and, although they may not so describe the unit of space as to indicate its component territorial parts and divisions, are held, under the modern rule of decision, divisible as to space and enforcible in equity within a reasonable area."

He then quotes from Ackelbein v. Davey Tree Expert Co., 233 Ky. 115, 25 S.W.(2d) 62, 64, a Kentucky case, in which quoted part of such opinion it is said: "In the case of Thomas W. Briggs Co. v. Mason, 217 Ky. 269, 289 S. W. 295, this court pointed out how covenants of the character of the one in question must not be wider than reasonably required for the protection of the employer's business, and restraint must not be broader than is necessary for the protection of the business or good will of the employer. Judge Dietzman, in his opinion above referred to, expressed the view that the contract under consideration was too broad in its terms, in that its negative covenant restricted the operations of Ackelbein to limits not necessary for the protection of the business of the Davey Company. He held, however, that, although the covenant in question may be too broad, yet, if it can be cut down to what is reasonable, and enforced *to that extent, the Davey Company is entitled* to such relief as may be necessary for the full protection of its business. Contracts restraining freedom of employment are enforceable when they are reasonable, taking into account the interest of the employer, the employee and the public. It was so held in Thomas W. Briggs Co. v. Mason, supra."

In Owl Laundry Co. v. Banks, 83 N. J. 230, 89 A. 1055, it was in effect said that both the American and English courts until recently have enforced the promise, but only as to those parts which *the courts consider reasonable.*

In Edgecomb v. Edmonston, 257 Mass. 12, 153 N. E. 99, 102, the Supreme Court of Massachusetts said: "Having regard to the

terms of the contract in the suit at bar and to the attendant circumstances of its making and breach, a majority of the court are of opinion that *the theory of the divisibility of space as applied to this contract is consonant with public policy and is more consistent with the intent of the contract than is the contention that the negative covenant is not enforceable in equity, in whole or in part, because the unit of space is not so described as to indicate its component territorial parts and divisions.*" (Emphasis ours.)

For the reasons pointed out the judgment is in all things affirmed.

Affirmed.

### On Motion for Rehearing.

In our original opinion we recited the facts that upon an application made to the Eleventh district court of Harris county the appellant prayed for the issuance of a temporary restraining order, and that upon a final hearing a permanent injunction be issued; that the cause was then transferred to the Fifty-fifth district court for further disposition; that on the 11th day of June, 1932, the presiding judge of the Fifty-fifth district court, sitting in chambers, entered an order granting the temporary restraining order prayed for by appellant, the same to continue in force pending a hearing to be held before Roy F. Campbell, judge of the Eightieth district court, on the 17th day of June, 1932; that respondent on said 17th day of June, 1932, answered praying for the dissolution of the temporary restraining order theretofore granted, *and that a temporary injunction be not granted upon the application of the complainant.*

On said 17th day of June, 1932, complainant denied generally the allegations of respondent's answer, and prayed that the temporary restraining order theretofore granted be made effective in the final decree in the cause, and on the same day, upon a hearing before the Eightieth district court sitting in chambers, the judge of that court rendered judgment refusing to dissolve the temporary restraining order theretofore granted, and in such judgment it is recited that, pending a final determination of the cause, the defendant F. McAnally is hereby enjoined, etc.

In our opinion, in stating the prayer of complainant, we unnecessarily stated that complainant made "a broad prayer for injunctive relief upon final hearing," in addition to the showing that complainant had prayed for a temporary restraining order upon which the judge of the Eightieth district court granted the temporary injunction above stated.

Appellant has filed his motion for rehearing in this court and asks that such motion be granted, asserting that "this court erred in holding in its opinion that 'a broad prayer for injunctive relief upon final hearing, and for such other 'and further relief, general and special, legal and equitable, to which he may show himself justly entitled' would support the issuance of a temporary injunction pendente lite, although such temporary injunction is not specifically prayed for by complainant."

This court did not intend to make any such holding as asserted by the motion, nor has it done so.

We concluded that the prayer for a temporary restraining order was synonymous with a prayer for temporary injunction. A holding to the contrary, in our opinion, would be the substitution of a myth for common sense.

A prayer for either a temporary restraining order or a temporary injunction is amply specific to support the jurisdiction of the court to grant relief by preliminary injunction as distinguished from a permanent or perpetual injunction. A prayer for either a temporary restraining order or a temporary injunction is all the authorities require.

In Riggins v. Thompson, 96 Tex. 154, 71 S. W. 14, 16, our Supreme Court held that a restraining order and a temporary injunction is of the same identical character of relief, to wit, preliminary relief, as distinguished from a permanent or perpetual injunction. The court said: "The learned judge, in effect, directs that a restraining order shall be granted until it is determined whether a permanent injunction shall issue, which means an injunction to remain in force until the final determination of the suit, and not an injunction granted upon the final trial, which is called a 'perpetual injunction.'"

The case of Ely v. Elliott (Tex. Civ. App.) 55 S.W.(2d) 1080, cited and quoted from by appellant as supporting his contention, is one, as shown by that part of the opinion quoted in appellant's motion for rehearing, in which there was no prayer for either a restraining order or a temporary injunction. The court in that case said: "One of the errors assigned by appellants is that the temporary injunction was erroneously granted because there was no prayer for such relief by appellees. With their position we must agree. Nowhere in the pleadings do the appellees seek a temporary injunction or a temporary restraining order and without such a prayer the court could not grant such relief."

As already shown, there was a prayer for a temporary restraining order which, in our opinion, is sufficient to sustain an order for a temporary injunction. An inspection of appellant's answer, including his prayer, will clearly show that he interpreted complainant's prayer as one for preliminary relief, either a temporary restraining order or temporary injunction. It is clear that the case was tried upon such interpretation by the trial court, and both parties to the suit, and that

appellant's contention that there was no plea authorizing the issuance of a temporary injunction was for the first time made in this court on appeal.

The motion for rehearing is refused.

Refused.