## CROWELL v. WOODRUFF.

Court of Appeals of Kentucky.

Nov. 21, 1951.

Rehearing Denied Feb. 15, 1952.

448

Dan M. Griffith, Jr., Owensboro, for appellant.

John F. Wood, Owensboro, for appellee.

STANLEY, Commissioner.

The judgment enjoins the appellant, Roy Crowell, from "directly or indirectly, ei-

ther personally or as an employee, engaging in any dry cleaning business in Owensboro, Kentucky, or any of its suburbs" from September 28, 1951, the date of the judgment, until July 27, 1952.

Crowell had been employed in dry cleaning establishments for 27 years. He was employed from 1947 by "Vogue Cleaners" in Owensboro, operated by one Hudson, until January 11, 1949. The business was then bought by the appellee, Floyd Woodruff. Crowell became manager or supervisor of the physical operation of the plant. He had nothing to do with solicitation or deliveries or the affairs of the office. There was no written contract of employment until February 10, 1951. It was made effective as of January 1, 1951. By this contract Crowell was employed by Woodruff as "production manager" at $80 per week and a share in the net profits. The relationship was to continue until either party should terminate it by thirty days' written notice. The contract contained the provision that Crowell would "not directly or indirectly, either personally or as an employee engage in any dry cleaning business in Owensboro, Kentucky, or in any other place which competes with said Vogue Cleaners for a period of one year after the termination of this contract except with the written consent of said employer."

On June 25, four and a half months after the execution of the contract, Woodruff notified Crowell that the employment would end July 29, 1951. His justification for discharging Crowell was that he could not get along with the help, but the evidence is contradictory. For a short while afterward Crowell worked for Woodruff at a plant in Evansville. He then obtained employment in Owensboro with a competing establishment. It made a newspaper "Announcement" that it had engaged the "expert services of Crowell to direct the cleaning and finishing of all garments." Another advertisement carried his name in small letters as manager. Crowell testified that he was not responsible in any way for the advertising.

Ancillary covenants of this character are valid and enforceable if the terms are reasonable in the light of the surrounding circumstances. They are sustained where the purpose is to prevent unfair competition by the employee or his subsequent employer, and the restraint is no greater than reasonably necessary to secure the protection. Reasonableness is to be determined generally by the nature of the business or profession and employment, and the scope of the restrictions with respect to their character, duration and territorial extent. In gauging reasonableness, there is a distinction between a covenant ancillary to the sale of a business and to a contract of employment. The character of service to be performed and relationship of the employee are of importance. Another test of reasonableness may be whether or not the restraint imposed upon the employee as covenantor is more comprehensive than is necessary to afford fair protection to the legitimate interests of the employer as covenantee. Torian v. Fuqua, 175 Ky. 428, 194 S.W. 359, L.R.A.1917F, 251; Thomas W. Briggs Co. v. Mason, 217 Ky. 269, 289 S.W. 295, 52 A.L.R. 1344; Johnson v. Stumbo, 277 Ky. 301, 126 S.W.2d 165; Calhoun v. Everman, Ky., 242 S.W.2d 100; 28 Am.Jur., Injunctions, Sec. 108; 36 Am. Jur., Monopolies, etc., Sec. 50 et seq.; Sec. 73 et seq.; Annotations, 98 A.L.R. 963 and antecedents.

The instant covenant is of dubious quality. There seems to be a lack of mutuality, for there is no corresponding or fair reciprocal obligation on the part of the employer. He did not bind himself to continue Crowell in his employment longer than thirty days, yet the employee bound himself to surrender his life trade in his home community for a period of one year. It is possible also that the covenant should be held without consideration since it was entered into subsequent to the contract of employment. See Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405.

We assume validity prima facie and concern ourselves with the proposition of whether under a practical consideration of the nature of the employment and the

450

early termination of the performance of the contract the employer may invoke equitable aid to enjoin the breach of the employee's covenant. Let it be borne in mind that covenants restrictive of future employment are not viewed with the same indulgence as those between a vendor and a vendee of a business and its good will where there arises an unjust competitive encroachment. Annotations, 98 A.L.R. 965.

■■ The appellant reasonably invokes the cardinal maxim of Clean Hands, or, rather, the related form, "He that hath committed inequity shall not have equity." The principle has broad range. Its basis is conscience and good faith. It embraces the exclusion of a party from the favor of equity where the result induced by his conduct in any degree will be unconscionable in the benefit to himself. Dunscombe v. Amfot Oil Co., 201 Ky. 290, 256 S.W. 427. The fairness of the transaction and its freedom of any taint of oppression is always a matter of consideration in weighing the right of a party to the aid of the court. Robenson v. Yann, 224 Ky. 56, 5 S.W.2d 271. The inequity of the plaintiff's plea for specific performance lies in the fact that having exacted the harsh covenant, he discharged his employee within a brief time.

■ There must be read into the contract an implied obligation to retain Crowell in the employment such period of time as would deserve the right to enforce the obligation he assumed not to enter other employment for a year. Otherwise, the vice of a unilateral agreement would relieve him altogether. The breach by an employer of a material provision of the contract of employment, such as failure to give notice of termination, even though it is brief, deprives him of the right to enjoin the employee's breach of such a restrictive covenant. Felton Beauty Supply Co. v. Levy, 198 Ga. 383, 31 S.E.2d 651, 155 A.L.R. 647.

■ In granting specific performance, the courts must maintain an equitable balance between the conflicting interests. The conceivable degree of protection for the one party should be commensurate with the conceivable loss to be suffered by the other party. Specific performance of this covenant would deprive a man of middle age with a family of the right to pursue his lifetime trade for a year in his home city of some 35,000 population. The benefit to the employer is doubtful, or at least unsubstantial, while on the other hand, serious and injurious consequences to the other party would be certain. The defendant's duties were those of a supervising artisan. He was not brought into contact with the patrons. He did not acquire knowledge of any trade secrets which might be made available to a competitor. Though the present employer has sought to capitalize Crowell's employment, there is no evidence that this will cause any material loss to the plaintiff. He will not suffer irreparable injury.

In the recent case of Calhoun v. Everman, supra, we considered a similar covenant between the owner of a dry cleaning and laundry plant and an employee known as a "route man" who later went into business for himself. We took notice of the philosophy that a man may sell his services but not himself, and pointed to the severe nature of covenants that imperil individual independence and deprive a man of a right to earn a living. We believed the enforcement of that covenant would result in an undue hardship without corresponding benefit to the master who exacted it and held that an injunction should not have been granted.

■ Of pertinence is the statement in Standard Oil Co. v. Bertelsen, 186 Minn. 483, 243 N.W. 701, 703, with reference to an employee sought to be enjoined: "To require him either to change his occupation, which he had followed for some three years, or to remove to a different community, was a harsh burden on him. A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor." Other cases relating to "Injunctive relief as affected by comparison of injury to the parties" are collected in

9 A.L.R. 1482; 52 A.L.R. 1372; and 98 A.L.R. 989.

We are of opinion that the judgment granting the injunction is erroneous, and it is reversed.

In considering the appellant's motion to suspend the injunction pending the appeal, it was necessary to review the record. The purpose of the motion is achieved by deciding the case and issuing a forthwith mandate, which will be without prejudice to the appellee's right to petition for a rehearing.