Mary A. HALL, M.D., Appellant,

v.

WILLARD & WOOLSEY, P. S. C., d/b/a
Daniel Boone Clinic, Appellee.

Court of Appeals of Kentucky.

June 4, 1971.

Rehearing Denied Oct. 29, 1971.

Robert J. Greene, Paintsville, for appellant.

William Forrester, Harlan, Dan Jack Combs, Pikeville, for appellee.

MILLIKEN, Chief Justice.

This appeal principally involves the validity of a restrictive covenant in an employment contract which the chancellor

permanently enjoined the employee, Dr. Mary A. Hall, from breaching.

The appellee, Willard-Woolsey Public Service Corporation, doing business as the Daniel Boone Clinic at McDowell in Floyd County, was the sublessee of the space and equipment of several Appalachian Regional Hospitals including the one at McDowell which had been leased by Clover Fork Medical Service, Incorporated. The Clinic amplified the equipment and staffed the personnel with the assistance of its lessor and employed, in all, forty-two physicians in its various operations. Liability and other insurance was supplied for the protection of its personnel as well as the Clinic itself.

Dr. Hall, a native of Floyd County, was employed by the Clinic after the completion of her one year residency training in Brooklyn subsequent to her graduation from the medical school of the University of Louisville, and worked for the Clinic for several years before the present altercation arose. She testified that she joined the Clinic because " * * * a person coming out of training does not know what it is all about." As a specialist in internal medicine and pediatrics she treated five to six hundred patients a month and she, and perhaps the patients, considered their relationship that of patient and personal physician rather than patient and clinic. Although she had not attended corporate business meetings she admitted that she was acquainted with the by-laws of the corporation and held stock in the corporation.

On July 2 of 1969 she accepted in writing the one-year employment contract tendered her for the year beginning July 1, 1969 at a salary of $24,000. The letter tendering her the employment twice called her attention to Article XII of the by-laws of the Corporation which, though not quoted in the tendering letter, reads as follows:

"RESTRICTIVE COVENANT: Each fulltime employee further expressly covenants and agrees (unless waived in writing by the corporation) that, for a period of one (1) year following the termination of his employment with the corporation, he will not, directly or indirectly, for himself or as an agent, on behalf of, or in conjunction with, any person, firm, association or corporation, engage in the practice of medicine within a fifty (50) mile radius from the city where he has primarily performed his services."

Dissatisfaction was brewing at the Clinic and three weeks after Dr. Hall had accepted the annual employment offer of the Clinic, she and four other physician-employees served notice in writing that they desired to " * * * resign from the Daniel Boone Clinic with the explicit purpose of forming our own group for the practice of medicine and with the explicit intention of continuing such practice in McDowell, Kentucky." They expressed dissatisfaction with the administrative policies of the Clinic, with their compensation, and asserted that the growth of the Clinic was " * * * the result of the undersigned and not to the name Daniel Boone Clinic of which no exterior indication as such exists." Twelve days later Dr. Hall requested the Clinic in writing to release her from her contract. The other dissidents had not renewed their contracts. The Clinic refused to release Dr. Hall for, if she were permitted to leave, there would be no internal medicine specialist left at the McDowell Clinic and apparently only one other physician who was licensed to practice in Kentucky. It is obvious that the Clinic was placed at a great disadvantage with inadequate time in which to re-staff its hospital. Efforts to heal the breach with the disgruntled physicians were unavailing.

While it certainly is arguable that competition is the life of trade, nevertheless, courts have upheld restrictive covenants where they are reasonable in scope and in purpose. As this court said in Crowell v. Woodruff, Ky., 245 S.W.2d 447 (1952):

" * * * Reasonableness is to be determined generally by the nature of the

business or profession and employment, and the scope of the restrictions with respect to their character, duration and territorial extent. In gauging reasonableness, there is a distinction between a covenant ancillary to the sale of a business and to a contract of employment. The character of service to be performed and relationship of the employee are of importance. Another test of reasonableness may be whether or not the restraint imposed upon the employee as covenantor is more comprehensive than is necessary to afford fair protection to the legitimate interests of the employer as convenantee. Torian v. Fuqua, 175 Ky. 428, 194 S.W. 359, L.R.A.1917F, 251; Thomas W. Briggs Co. v. Mason, 217 Ky. 269, 289 S.W. 295, 52 A.L.R. 1344; Johnson v. Stumbo, 277 Ky. 301, 126 S.W.2d 165; Calhoun v. Everman, Ky., 242 S.W.2d 100; 28 Am.Jur., Injunctions, Section 108; 36 Am.Jur., Monopolies, etc., Section 50 et seq., Section 73 et seq., Annotations, 98 A.L.R. 963 and antecedents."

Although it may be urged that public policy requires that such restrictive covenants should be frowned upon by the courts when applied to the medical profession because the health of the public is implicitly involved, it may also be urged that the health of the public is better served if squabbles among physicians are averted by prior agreements and the public is not a pawn in the squabble. At any rate, according to 54 Am.Jur., Monopolies, Section 555,

"The courts have enforced, with respect to physicians' contracts of employment, townwide, citywide, and countywide covenants, and covenants not to practice within 5, 20, 25, 30, or 50 miles of the same city. But the courts have held unreasonable, and unenforceable as written, a physician's unlimited term, citywide covenant; an ear, nose, and throat specialist's covenant not to practice within 50 miles of the same city; a surgical chiropodist's unlimited-term covenant not to practice within 100 miles of his employer's office; and a physician's 10-year covenant not to practice within 100 miles of the same city."

An overall view of the subject is summarized in Volume 6 of Corbin on Contracts, Section 1394, as follows:

"It is the function of the law to maintain a reasonable balance, and this requires us to recognize there is such a thing as unfair competition by an ex-employee as well as unreasonable oppression by an employer. The circumstances of each case must be carefully scrutinized." (page 89)

" * * * The courts have tried to maintain this reasonable balance. They have specifically enforced restrictive promises in many cases, when the restriction is one that accords with prevailing mores as made known to the judge; and they have refused such enforcement in many other cases in which the restriction is deemed excessive abinitio, or in which it subsequently operates harshly, or in which the termination of the employment is accompanied by unworthy action by the employer. In the older cases courts have been too ready to assume a mechanical sanctity of contract." (pages 89–93)

"The restriction is deemed excessive abinitio if its limit in either space or time is greater than is necessary for the employer's protection against 'unfair' competition." (pages 94–95)

In any event, as recently as 1962 in Lareau v. O'Nan, Ky., 355 S.W.2d 679, which we are requested to overrule, we considered the problems presented here—that is, a restrictive covenant on the practice of a physician, and there declared at page 681, "There is no basic public policy against such covenants, particularly when they invoke professional services. In fact, the policy of this state is to enforce them unless very serious inequities would result.

See Bradford v. Billington, Ky., 299 S.W. 2d 601. In our opinion there are no strong equities in Lareau's favor. It is also our opinion that the damages that the clinic might suffer from breach of the covenant though intangible, are sufficient to justify invoking the injunctive powers of the courts, and that, since the damages are not susceptible of monetary valuation, there is no adequate remedy at law." In Lareau the restriction was for five years in the county of Henderson, while here it is only for a year in a fifty-mile radius.

We conclude that we see no sound reason to deviate from the policy considerations discussed in Lareau and so affirm the judgment. Other issues raised we do not consider of sufficient importance to discuss.

The judgment is affirmed.

STEINFELD, PALMORE, REED and NEIKIRK, JJ., concur.

OSBORNE, J., dissents.

EDWARD P. HILL, J., not sitting.

OSBORNE, Judge (dissenting).

I respectfully dissent from the majority opinion in this case as I believe the interest of the public in medical care outweighs the selfish interest of a physician to rid himself of competition.

I especially believe it to be heinous when an older practitioner of any profession invokes a contract that in any way hampers a younger practitioner in his or her profession. The law has never favored contracts of this type and to me this one is especially reprehensible.

For the foregoing reasons I respectfully dissent.