### CALHOUN v. EVERMAN.

Court of Appeals of Kentucky.
June 8, 1951.

Rehearing Denied Oct. 5, 1951.

Thos. D. Theobald, Jr., Grayson, Thomas R. Burns, Morehead, for appellant.

H. R. Wilhoit, Grayson, for appellee.

SIMS, Justice.

Appellee, W. R. Everman, filed a petition in equity against appellant, Lawrence Calhoun, wherein he sought an injunction against the latter, his former employee, from entering the dry cleaning and laundry business in Grayson, Kentucky, and certain surrounding towns for a period of one year from Nov. 9, 1951. Hon. Frank C. Malin, Special Judge, granted the injunction and Calhoun asks a reversal of the judgment because: 1. His general demurrer to the petition as amended should have been sustained; 2. the contract is indefinite, lacks mutuality and works an undue hardship on appellant; 3. no express contract was proven; 4. the alleged contract lacks consideration and is within the statute of frauds. As we think the second ground is well taken, it will not be necessary to discuss the other three, except to say that although ineptly drawn the petition does state a cause of action and the demurrer was properly overruled.

In 1945, Everman entered the dry cleaning and laundry business in Carter County. He owned his own dry cleaning plant but the laundry work was done in Ashland. His trucks picked up dry cleaning and laundry in the town of Grayson and in several small towns in the community. In 1946, he employed Calhoun, whose chief duties were those of "route man" to operate a truck in collecting and delivering dry cleaning and laundry. The parties entered into no contract when Calhoun was employed; except that Everman agreed to teach him the business under the Division of Vocational Education whereby the United States Government supplemented Calhoun's salary.

Everman had a business competitor known as "Jones Dry Cleaning", which Everman bought out on June 26, 1950. The evidence is conflicting as to whether Calhoun conducted the negotiations for this trade or whether Everman did. Everman testified Calhoun not only encouraged him to make the deal, but conducted the negotiations with John Paul Jones, the owner of the business which Everman purchased; while Calhoun, John Paul Jones and Seaton Jones, who conducted the business for his brother, all testified Calhoun did not negotiate the deal but that Everman traded for himself.

On Nov. 11, 1950, Calhoun quit his job and was preparing to enter the dry cleaning and laundry business in Grayson and surrounding communities when Everman filed this suit against him averring that Calhoun agreed with Everman just before the latter purchased the Jones business on June 26, 1950, that Calhoun "would not in any manner, either directly or indirectly, for himself, or any other person, firm or corporation, in any way enter into competition in the aforesaid business of dry cleaning and laundry with this plaintiff".

Everman testified that immediately prior to buying the Jones business this conversation occurred between him and Calhoun: "I said, if I do buy them out, I think I should have a contract with you (that) you will not go in business against me. He said, I would not think of such a thing,

you and your wife have been too nice to me. Besides, that would be dirty. If that is the only reason, go ahead."

Everman did not remember whether any mention was made of the time the contract was to run, but that his wife told him it was for twelve months. It is interesting to note that Mrs. Everman testified she did not hear her husband say anything to Calhoun as to the time the latter would not go into business.

Several witnesses corroborated Everman as to what was said between him and Calhoun. However, Calhoun denied ever agreeing not to become a competitor of Everman and testified the latter wanted him to enter into a written agreement to that effect, but he declined. Everman testified he never requested a written contract with Calhoun.

 The express contract which Everman attempted to prove by the above quoted conversation with Calhoun was anything but definite and certain. It will be noted that no specific limitation was given as to space, although it may be presumed the parties had reference to the definite territory within which Everman was operating his business. Everman failed completely to prove the limit as to the time the contract was to run. The general rule is that contracts in restraint of trade are not enforcible where they are unlimited as to both time and space, or as to where they are unlimited as to space but limited as to time. However, where such contracts are unlimited as to time but are confined to a reasonable territory, they are enforcible. 17 C.J.S., Contracts, § 241 et seq., page 624; Torian v. Fuqua, 175 Ky. 428, 194 S.W. 359, L.R.A.1917F, 251; Coleman v. Sowders, 206 Ky. 841, 268 S.W. 579.

No consideration moved from Everman to Calhoun to enter into the agreement. The only consideration Everman can rightfully claim supported the contract was that he acted to his detriment on Calhoun's promise and would not have bought out his competitor but for such promise. Admittedly, that would be a sufficient consideration if definitely established. But this appears to be an afterthought upon the

part of Everman. He bought out the Jones business for his own benefit at the greatly reduced price of $500 after dickering with him for some time and without regard to any promise made by Calhoun. There was no agreement between the parties as to how long Calhoun would remain in Everman's employment and it is not contended that in consideration of Everman continuing to employ Calhoun, the latter would not become a competitor of his former employer. Everman had the right to discharge Calhoun the day after he acquired the new business and Calhoun would have been without legal right or remedy.

A greater degree of certainty is required in the terms of a contract to be specifically enforced than is necessary in one to support an action for damages. Where specific relief is sought, it is essential that the contract itself be specific. 49 Am.Jur. "Specific Performance", § 25 p. 38. Here, the contract does not contain that degree of certainty for equity to specifically enforce it.

Want of mutuality of obligation and risk may generally be urged as a bar to specific performance. 49 Am.Jur. "Specific Performance" § 39, p. 53. Specific performance of a contract will not be enforced which imposes a continuing obligation upon the person against whom it is asked, while performance of its terms is optional with the one seeking relief. See § 34, page 46 of the text just cited. Before it will grant specific performance, equity requires a mutual understanding and a positive assent on the part of each party. McKnight v. Broadway Inv. Co., 147 Ky. 535, 145 S.W. 377; Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky. 438, 57 S.W.2d 65.

Contracts in restraint of employment or personal services are not favorites of the law and will not be enforced where they imperil individual rights which our fundamental laws have declared to be inalienable. Restraint of employment tends to deprive the public of efficient service as well as to impoverish the individual and reduce him to the status of a public charge.

In this country there has recently arisen a school of thought which places much importance on the plight of the individual who might be needlessly pauperized while ready, able and willing to work at his usual occupation for the support and independence of himself and family. Equity will not enforce the naked terms of a negative covenant restraining a man from other employment unless the employer has a substantial right peculiar to his business which it is the duty of the court to protect, if it can do so without imposing an undue hardship upon the employee. Here, Everman had no such business right in need of protection but he only sought to protect himself from competition at the expense of Calhoun. An exhaustive case on the subject is Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405.

In Schneller v. Hayes, 176 Wash. 115, 28 P.2d 273, where the contract promised the employee nothing in the way of future employment and was terminable at the pleasure of the employer and stipulated nothing as to wages, it was held that an action for specific performance would not lie and the employer's remedy was at law for breach of contract.

As the contract Everman claims to have made with Calhoun through their conversation over Everman buying out the Jones business was not specific as to the time it would run nor as to the exact territory covered and as it lacked mutuality and will work an undue hardship upon Calhoun and his family if specifically enforced, we have reached the conclusion that the chancellor erred in granting specific performance. Everman's remedy, if any, is an action at law for breach of contract. The remedy of specific performance is not an absolute one but it rests within the sound discretion of the chancellor to be exercised upon a consideration of all the facts and circumstances of the case, with the view of subserving the ends of justice. 49 Am. Jur. "Specific Performance" § 8, p. 13. Under the facts and circumstances presented in this record, specific performance should not have been granted. The modern philosophy of the law is that a man may sell

his services but not himself, as was pointed out in Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405.

All other questions are not decided but are specifically reserved.

The judgment is reversed and one will be entered consistent with this opinion.