SKYLAND BROADCASTING CORPORATION, Plaintiff, v. HAMBY and WAVI, INC., d. b. a. WAVI BROADCASTING CORPORATION, Defendants.

Common Pleas Court, Montgomery County.

No. 111287.   Decided March 1, 1957.

Coolidge, Wall & Wood, Dayton, for plaintiff.
Pickrel, Schaeffer & Ebeling, Dayton, for defendants.

## OPINION

By McBRIDE, J.:

This case was submitted to the court on the petition of the plaintiff, Skyland Broadcasting Corporation (WONE), for a temporary and permanent injunction restraining the defendant, William H. Hamby, from violating restrictions in an employment contract and on the amended answer of William H. Hamby.   WAVI, Inc., doing business as WAVI Broadcasting Corporation, is joined as a party defendant as the present employer of William H. Hamby to supplement the enforcement of any

order the court may issue. There is no allegation that WAVI, Inc. induced the termination of the employment contract by Mr. Hamby however an officer of WAVI did discuss employment with Mr. Hamby and obtained a legal opinion on his contract with WONE two months before Hamby left WONE.

The plaintiff relies upon a written contract signed by William H. Hamby on September 9, 1954, Item 5 of which provides:

"Upon the termination of this contract of employment either by discharge, dismissal or by voluntary action of the employee after the lapse of a period of three (3) months or more following his employment, the said employee covenants and agrees that within a period of eight (8) months after such termination he will not act as announcer-disc jockey directly or indirectly for himself or for any person, firm or corporation operating a radio or television station within a 35 mile radius of the transmitter or situs of the antenna or transmitting aerial of radio station WONE and WTWO."

It will be observed that the conditions set forth in Item 5 were not in effect until the expiration of three months following his employment; that upon termination of employment William H. Hamby agreed not to act as an announcer-disc jockey for a period of eight months on any radio or television station operating a transmitter within thirty-five miles of station WONE or WTWO, the latter also operated by the plaintiff.

The restrictions described in this contract are generally regarded as valid even though they are to a limited extent in restraint of trade. The court finds the restrictions reasonable as to time and space, necessary for the protection of the business and listening audience of the plaintiff, and not any greater restraint upon the employee than reasonably necessary for such protection. 11 O. Jur. 2nd p. 362 et seq; Briggs, d. b. a. The Welcome Wagon Service Co. v. Butler, 140 Oh St 499, 24 O. O. 523; Toulmin v. Becker (App., 2nd Dist.) 69 Abs 109, 124 N. E. 2nd 778 and many others cited in the above cases. In reference to the restrictions the testimony established that the defendant left station WONE on February 11, 1957 and was employed at WAVI on February 18, 1957. In connection with points subsequently discussed, the petition was filed February 19, 1957 and tried to the court on the merits on February 26 and 27, 1957. It is the finding of the court that the defendant was employed by the defendant, WAVI, Inc., within a week and that the transmitter of the new employer is within the thirty-five mile area; that because of the fact that WONE operates on a greater authorized power than station WAVI, all of the listening audience of the latter station is exclusively within that of WONE. There is no testimony in this case with respect to the location of the transmitters of any other Dayton or Cincinnati stations.

The court also finds that the defendant, William H. Hamby, as a result of his experience as an announcer-disc jockey and more especially because of his two and one-half years on WONE in this capacity as a specialist in the "hill billy" type entertainment is known in the trade as a unique or "personality" type entertainer and of a great value in the radio broadcasting field. Such personality type employees are of un-

usual value to the employer in retaining the listening audience of a station. In the instant case the evidence indicates the defendant, Hamby, while employed by the plaintiff, competed unusually well according to a generally accepted rating during hours when nationally known personalities were on the air on other stations. The significance of this feature of the case was discussed in an unreported decision of the Court of Appeals of Summit County which approved an injunction in a similar situation. Summit Radio Corporation (WAKR) v. Albert James Freed, No. 4106, decided December 6, 1950. The testimony of both immediate parties that considerable sums were spent in advertising and other promotion of the "Skyland Ranch" program and of William H. Hamby as its feature personality strengthens the distinct, unique character of this employment and the necessity for the plaintiff to obtain protection to prevent its value being used by a competitor within the same geographical limits. Neither party was obligated to make such expenditures: both found it to be within their respective interests to do so.

The court recognizes the unusual nature of radio broadcasting, its relationship with the listening public, and the unusual and unique nature of its service and the service of its performers and employees who are active in this medium of entertainment.

It is apparent that the written contract was not designed to cover the full agreement of the parties. Salary, hours of employment, and duration were not expressed. This agreement could be terminated at any time by either party. However it is significant that there was no misunderstanding on this subject. Mr. Hamby testified that he agreed to a new salary and a new hourly schedule just a few days before he left the employment of the plaintiff after two and a half years service.

The defendant urges that because the condition in Item 5 provides for its application upon separation by "discharge, dismissal or by voluntary action of the employee after a lapse of a period of three months" the contract is void as an unreasonable control by the employer. The court is aware of a conflict of authority on this point however the problem is not simply one of construction of the written contract. An employee who does not desire to voluntarily quit may deliberately commit one or more acts designed to necessitate his dismissal. This is especially true in occupations dealing with the public. To deny an employer the right to an injunction merely because an employee succeeded in provoking his own discharge would be incredible law. The true test in this situation is the factual manner in which the employment is severed. In the instant case it is necessary to discuss this point because of the argument advanced that the right to discharge or to dismiss destroys the right to an injunction. There is no evidence of any dismissal or discharge by the plaintiff. In fact the evidence is to the contrary.

The court finds that the defendant, William H. Hamby, voluntarily quit in the middle of a program. He left the job while his program was still on the air. He testified that he did so because he did not approve of the new format adopted by the station and its program director. Specifically he said he had too many mechanical details to perform and

in addition that the mechanical announcements and the like, in his opinion, ruined the effect of his "personality" on the type of program in his charge. It was after the first hour of experience with the new format that the defendant quit the air and walked out of the station notifying his employer that he was finished and would not return unless the so called "new sound" style was abandoned by his employer. Under the circumstances and in view of the at will nature of his employment he was free to do so. However for the purposes of injunctive relief under Item 5 of the contract the termination of employment was not due to any act of the employer who seeks protection under the contract. The termination was effected by the defendant, William H. Hamby, without just or reasonable cause. What he was asked to do under the new format of the "Skyland Ranch" program was exclusively within the right of the employer. The sudden and arbitrary refusal to work without further experience under the new style and without completing the first full program was unreasonable in so far as this subject need be considered by the court for the purpose of determining whether the plaintiff is deprived of the right to equitable relief.

The court has reserved for final comment the question of injury or damages. The plaintiff alleges that violation of the contract "has caused and will continue to cause plaintiff great and irreparable damage" for which there is no adequate remedy at law. Many cases have turned on this point mainly because of the inability to establish damages or because the court considered the damages too trivial to justify the relief requested. Certainly damages cannot be presumed. From the facts, some of which the court has recited, it is obvious that it is impossible at this early date, within two weeks after the termination of the contract, to ascertain the nature and extent of the damages. The testimony is that one advertising agency immediately canceled a contract when it learned that Mr. Hamby had quit. Two other individuals canceled their advertising. Gross sales of radio time for the program decreased the first week. In addition to this, Mr. Hamby, within one week, obtained employment at a competing station in the same identical capacity and on a similar type program to that which he conducted for the plaintiff. The new employer with corporate counsel representing Mr. Hamby lends an atmosphere of a corporate battle between the competing stations. The immediate loss because of termination is incidental to the quiting and to that extent may constitute an injury for which damages may not be awarded. However the immediate employment of a radio or any unusual performer or artist by a direct competitor in the same limited geographical area in violation of a valid and express agreement not to do so during a reasonably short period is a situation peculiarly within the sphere of equitable jurisdiction and requires the exercise of such equitable power to prevent that type of injury and damages which can be determined, if at all, only with incredible difficulty at the end of the period of time agreed upon in the contract. 21 O. Jur. 1143, 1144; 28 Am. Jur., 242. We can only anticipate the problem of ascertaining the value represented by a loss of listener ratings to the former employee on the competing station and the effect of such loss upon advertisers,

who are influenced by such ratings, and upon listeners. The number and complexity of the factors involved cannot be equaled in any other situation. This indicates that the nature and full extent of the direct and incidental injury to the plaintiff is incapable of exact measurement and constitutes an irreparable loss. As the court has indicated, the appropriate step is equitable prevention of such improper acts by the defendant and the resulting injury by specifically enforcing the restriction which the defendant expressly agreed to in event this very situation arose.

On the objection of the defendant to the introduction of Plaintiff's Exhibit F, the objection is sustained.

Accordingly the court finds for the plaintiff. An entry may be prepared as prayed for in the petition for a temporary and permanent injunction. In event of appeal, the bond is fixed at $10,000.00 for the protection of the plaintiff for damages arising out of the violation of the contract by the defendant during the period from February 11, 1957 to October 11, 1957.