**Daniel G. LAREAU, Appellant,**

v.

**Walter L. O'NAN et al., etc., Appellees.**

Court of Appeals of Kentucky.

March 23, 1962.

Charles B. West, Walker & West, Henderson, for appellant.

Leonard T. Mitchell, Mitchell & Withers, Henderson, for appellees.

CULLEN, Commissioner.

In August 1959 Dr. Daniel G. Lareau (a physician with several years' experience who had been practicing in Ohio) was employed by the Henderson Clinic of Henderson, Kentucky, under a contract which provided that in the event of a termination of the contract (which could be effected by either party upon 30 days' notice) Lareau would not for five years thereafter engage in the practice of medicine in Henderson County. In June 1960 the clinic terminated the contract and within a few days thereafter Lareau opened an individual office in the city of Henderson and undertook to engage in private practice of medicine. In an action brought by the clinic judgment was entered enjoining Lareau from practicing medicine in Henderson County for a period of five years from the date of termination of the contract. Lareau has appealed.

Lareau's major arguments, which include claims of lack of consideration and lack of "mutuality," may be reduced to the single basic proposition that under all of the circumstances attending the making and termination of the contract it would be *unfair* to compel him to comply with the no-practice covenant. And in substance his contention of unfairness is simply that any damage the clinic might suffer from breach of the covenant, or any benefit it might obtain from enforcement of the covenant, would be negligible and wholly disproportionate to the injury Lareau would sustain by being compelled to observe the covenant.

It is true that there is no evidence that the clinic will suffer materially in a financial way from a breach of the covenant, but by the same token there is no evidence that Lareau will sustain serious financial detriment from being required to abide by the covenant. Just as the benefits the clinic might receive from enforcement of the covenant are intangible, so are most of the injuries that Lareau claims he will suffer. Lareau lists as the major elements of damage to him the loss of the practice he "worked so hard to build" and the loss of the value of the good name he had acquired in the community. But the building up of his practice and the development of his good name were directly attributable in major part to his association with the clinic, and to achieve these things quickly was the inducement for him to associate with the clinic.

The main cases upon which Lareau relies are ones involving unskilled or semi-skilled employes, such as Calhoun v. Everman, Ky., 242 S.W.2d 100, and Crowell v. Woodruff, Ky., 245 S.W.2d 447. In those cases the employes had a very limited capacity to compete in the labor market, and it was considered unconscionable to deprive them of their livelihood merely to protect the comparatively insignificant interest of the employers who had required restrictive covenants of the employes. Here, however, the services Lareau is qualified to render are of a character for which there is an extremely favorable seller's market. It is a matter of common knowledge that there is a general nationwide demand for doctors, and in almost any community a doctor can earn a handsome income. The wide gates of opportunity for Lareau are open throughout the nation, and the mere fact that the door of Henderson County is closed to him can cause no such injury to him as to arouse the compassion of a court of equity.

Lareau argues lack of consideration and lack of mutuality, but it is clear that he means not such a lack as would prevent the contract from being valid in law, but only such that the contract should not be enforced in equity. It also is clear that he is contending that in order for the no-practice covenant to be enforceable in equity there must have been a reciprocal covenant or separate consideration on the part of the clinic. There is no such requirement.

Stiles v. Reda, 312 Ky. 562, 228 S.W.2d 455; Bradford v. Billington, Ky., 299 S.W.2d 601; David Roth's Sons Inc. v. Wright and Taylor Inc., Ky., 343 S.W.2d 389.

Lareau maintains that the public will be injured by enforcement of the covenant. Again he relies on the unskilled employe cases, where the particular employe had worked in the particular community all of his life. Here, although the Henderson community may need more doctors, it will not be deprived, by enforcement of the covenant, of any service it had before the contract was made. In our opinion the community will not suffer such injury as to justify a refusal by a court of equity to enforce the covenant.

It must be remembered that Lareau, wholly free of any financial coercion, made a solemn covenant with the clinic. There is no basic public policy against such covenants, particularly when they involve professional services. In fact, the policy of this state is to enforce them unless very serious inequities would result. See Bradford v. Billington, Ky., 299 S.W.2d 601. In our opinion there are no strong equities in Lareau's favor. It is also our opinion that the damages the clinic might suffer from breach of the covenant, though intangible, are sufficient to justify invoking the injunctive powers of the courts, and that, since the damages are not susceptible of monetary valuation, there is no adequate remedy at law.

Lareau contends that the contract contemplated he would render services only in his specialty, internal medicine, and that the clinic violated the contract by requiring him to perform general practice services. The words of the contract are that Lareau "will join the Clinic staff as a physician and will during the term of this agreement devote his full time to the practice of medicine." We find no ambiguity in these words such as would permit a showing by parol evidence that Lareau was to render only specialized services.

Lareau's final contention is that the clinic breached the contract by not paying him the amount to which he was entitled for the period the contract was in force, and therefore the no-practice covenant should not have been enforced, or in any event he should have been awarded recovery on his counterclaim for the amount claimed to be due. The only evidence submitted in support of this contention was the testimony of an accountant who had examined nothing but the expense records of the clinic and who testified that certain items charged as expenses were not properly so chargeable under customary accounting practices. The contract provided that Lareau would be compensated at a rate equal to 13 percent of the net earnings of the clinic, "as computed in accordance with the Clinic's existing accounting practices." There was no evidence that the expense items in question were charged as such in violation of the clinic's existing accounting practices. It appears that these items were treated as expenses in determining the compensation of the partner members of the clinic. It may well have been that the clinic's existing accounting practices with respect to *income* were more favorable to Lareau than customary accounting practices would have been, and since there was no evidence concerning income accounting we agree with the trial court that there was insufficient evidence to establish a breach of the contract concerning the amount of compensation payable to Lareau.

The judgment is affirmed.

PALMORE, J., not sitting.