653 So.2d 30 (1995)
CELLULAR ONE, INC.
v.
John Brent BOYD.
CELLULAR ONE, INC.
v.
Hamilton J. LEMOINE.
Nos. 94 CA 1783, 94 CA 1784.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Rehearing Denied May 2, 1995.
*31 John Tharp, Baton Rouge, and Daniel Lund, New Orleans, for Cellular One, Inc.
Michael McKay, Baton Rouge, for Affordable Cellular & Beepers, Inc.
Dawn Guillot, Baton Rouge, for John Brent Boyd.
Joseph Greenwald, Baton Rouge, for Hamilton J. Lemoine.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
This is an appeal by defendants from the granting of a preliminary injunction enforcing a noncompetition agreement executed between plaintiff and defendants.

FACTS
John Boyd and Hamilton Lemoine were employed as sales representatives for Cellular One from 1989 to 1993. During the course of their employment, they signed several noncompetition and nondisclosure agreements. When Boyd and Lemoine left the employment of Cellular One in December of 1993, they had executed identical noncompetition agreements which became effective on September 1, 1993.[1]
Upon leaving Cellular One both defendants went to work for Affordable Cellular, an authorized agent of Bell South Mobility. Cellular One filed this suit for injunctive relief asserting that Boyd and Lemoine were in violation of the noncompetition agreement. Cellular One sought to prevent the defendants from competing against it in the cellular telephone business and from soliciting the business of Cellular One's customers in the parishes of East Baton Rouge, West Baton Rouge, Ascension, and Livingston. The suit also sought protection against disclosure of confidential information.
Following the hearing on the preliminary injunction, the trial court enjoined defendants from engaging in the radio telephone service business in the parishes of East and West Baton Rouge, Ascension, and Livingston, for a period of two years. The court further enjoined defendants from directly soliciting any Cellular One customer to transfer *32 or purchase radio telephone services or equipment. The court also ordered that should any customer of Cellular One initiate contact with defendants, said customer shall be referred back to Cellular one and not to any other radio telephone service. The trial court then suspended that portion of the injunction which prohibited the defendants from engaging in the radio telephone service business.
Defendants appeal, asserting that the trial court erred in:
1. enforcing a noncompetition clause in an employment at will agreement because the agreement lacks mutuality of obligation and the agreement fails to provide sufficient consideration for the employee;
2. failing to find that circumstances involving economic threats were sufficient to constitute duress;
3. failing to rule that the agreement provided for stipulated damages;
4. finding that the noncompetition clause was sufficient to meet the requirements of La.R.S. 23:921; and
5. granting a preliminary injunction because no evidence was set forth that defendants in fact violated the confidentiality or nondisclosure clauses of the agreement.

THE NONCOMPETITION AGREEMENT
The contract at issue in this suit contains several provisions which purportedly comprise the noncompetition agreement. These provisions are:
III. Commissions and Other Incentives
D. Non-Competition Payments (NCPs):
NCPs are payable for the term listed below even if the eligible Sales Representative leaves the employment of the company. The main exception to this statement is if the former Sales Representative is employed by or is contracted with any Radio/Telephone Service of Baton Rouge Cellular One during the time period that the NCP payments are due as per the Employee Handbook. In the event that the Sales Representative is employed by or is contracted with a Radio/Telephone Service, all NCPs are forfeited by the Sales Representative. The Sales Representative also forfeits all NCPs earned during his/ her employment at Cellular One.
. . . .
VIII. Direct Sales Non-Competition Payments (NCPs)
NCPs are payable at 3% for 3 years for those accounts having monthly bills over $50 per month. This includes access and airtime. The 3 years is based from the date of the start of the original contract. Terms & Conditions: (Eligibility Requirements)
. . . .
6.) Should the Direct Sales Rep leave or be terminated, Cellular One will continue to fulfill its obligation to the employee, but only for as long as the former employee does not engage in business or employment with another Radio/Telephone Service entity. Also, should any customer cancel, any retractions the former employee might have qualified to receive will be applied to the noncompetition payment.
. . . .

NON-COMPETITION AGREEMENT
I agree to refrain from carrying on or engaging in a radio telephone service business similar to that of Cellular One, Inc. and/or from soliciting customers of Cellular One, Inc. within the parishes of East Baton Rouge, West Baton Rouge, Ascension and Livingston for a period of two years from separation of employment with Cellular One, Inc.

THE STATUTORY PROVISION
Louisiana has consistently had a strong public policy against noncompetition contracts which prohibit employees from competing with a former employer. Orkin Exterminating Company v. Foti, 302 So.2d 593, 596 (La.1974). Prior to 1989, La. R.S. 23:921 permitted noncompetition agreements only if the employer incurred significant or extensive expenditures in the training of the employee or the advertisement of the business. Id. at 597. In 1989, the legislature amended La.R.S. 23:921 and replaced this single exception. However, the public policy disfavoring noncompetition agreements is still reflected *33 in subsection (A) of the amended statute which provides:
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
One of the exceptions to this general prohibition is contained in subsection (C) which states:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Subsection (G) lists remedies available to an employer when a former employee breaches a noncompetition agreement.
Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitled the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
In amending section 921, the Louisiana Legislature expanded the use of noncompetition agreements. The legislature recognized that employers have a right to protect their business investment provided they comply with the exceptions contained in the statute.

COMPLIANCE WITH LA.R.S. 23:921
In assignment of error four, defendants allege that the agreement does not meet the requirements of La.R.S. 23:921(C). Defendants assert that the agreement does not adequately define the geographical location or time limitation within which the noncompetition agreement would apply. They further assert that there is no adequate definition of the business from which they are allegedly prohibited from competing.
To be valid, a noncompetition agreement may limit competition only in a business similar to that of the employer, in a specified geographic area and for up to two years from termination of employment. Public policy requires that the provisions of noncompetition agreements be strictly construed in favor of the employee. See Pelican Publishing Company v. Wilson, 626 So.2d 721 (La.App. 5th Cir.1993); Comet Industries, Inc. v. Lawrence, 600 So.2d 85 (La.App. 2nd Cir.), writ denied, 604 So.2d 1002 (La. 1992). Accordingly, noncompetition agreements which fail to specify the "parish or parishes, municipality or municipalities, or parts thereof "wherein the employer carried on a similar business are unenforceable. Comet Industries, Inc., 600 So.2d at 87. Similarly, contracts seeking to extend noncompetition agreements beyond the two year statutory limit are null and void. Allied Bruce Terminix Companies, Inc. v. Ferrier, 93-0561 (La.App. 1st Cir. 3/11/94); 634 So.2d 44.
In this case, the contract prevents the defendants from "engaging in a radio telephone service business similar to that of Cellular One, Inc." in the parishes of East Baton Rouge, West Baton Rouge, Ascension and Livingston, for a period of two years after employment termination. The language used in the agreement to define plaintiff's business tracks the statutory language of La.R.S. 23:921(C). This language adequately defines the business from which the defendants are prohibited from competing. Further, the geographic and time limitations are clearly specified in the contract and comply with the statutory guidelines.
For these reasons, we find that the noncompetition agreement meets the requirements of La.R.S. 23:921(C) and accordingly, this assignment of error is without merit.

MUTUALITY AND CAUSE
In assignment of error one, defendants assert that noncompetition agreements *34 should be unenforceable in employment at will situations because of a lack of mutuality and an insufficiency of cause.
Both defendants were at will employees who are now asking this Court to apply principles of "mutuality" stated in a Kentucky federal district court case, rather than to follow the principles and policies set down by the Louisiana legislature.[2] Defendants assert that "the Courts have yet to address the inequities and legal deficiencies involved in an employment agreement which encompasses no term and/or an employment at will clause and a non-competition agreement."
To illustrate the potential inequities, defendants present the following example. An employer who has executed an employment agreement which contains no term and a non-competition agreement can fire the employee without cause at any time. However, the employee is restricted from any participation in his established career for two years within a limited geographic area. In the most severe circumstances, an employer may enter into such an agreement with an employee one day, terminate the employee the following day, without cause, and thereafter, restrict the employee from participating in his profession.
The inequities illustrated through defendants' example are not present in this case. Here, the defendants were employed by Cellular One as successful sales representatives for three and one half years.[3] Throughout their employment, Cellular One periodically requested the defendants and all sales representatives to execute employment agreements. These agreements were at will employment contracts containing noncompetition agreements. Defendants signed these agreements as a condition of their continued employment. Defendants now complain, after successful careers with Cellular One, that such agreements potentially establish great inequities which must be addressed by this Court.
After reviewing the extensive history of noncompetition agreements in Louisiana, we conclude that the Louisiana legislature has adequately addressed the equities and inequities of such agreements. After dealing with this issue for many years, the legislature amended La.R.S. 23:921 in 1989, and expanded the use of noncompetition agreements in Louisiana. While subsection (A) reflects the strong public policy against noncompetition agreements, the legislature made it clear, in subsection (C), that "any person" may enter into such a contract with their employer provided they follow the specific guidelines. The legislature has already addressed the policy considerations raised by defendants. Therefore, we are compelled to follow the unambiguous language of the statute which allows "any person", including an at will employee, to enter into a noncompetition agreement.
Furthermore, we do not find that the agreement is unenforceable for lack of cause. The Civil Code defines a contract as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. No obligation can exist without a lawful cause, which is defined as "the reason why a party obligates himself." La.Civ.Code arts. 1966-67. The defendants signed the agreements as a condition of continued employment. Employment was the valid cause of the contract.
For these reasons, we reject defendants' argument that the noncompetition agreement is unenforceable because of a lack of mutuality or insufficient cause.

DURESS
In assignment of error two, defendants assert that the trial court erred in failing to find that the agreement was vitiated by economic *35 duress. Defendants argue that the threat of termination constituted economic duress.
However, defendants were at will employees subject to termination at any time, for any reason. The threat of doing a lawful act does not constitute duress. La.Civ.Code art. 1962. Thus, the threat of termination, an act which Cellular One had a legal right to do, cannot constitute duress. See Allied Bruce Terminix Company, Inc. v. Guillory, 94-319 (La.App. 3rd Cir. 11/2/94), 649 So.2d 652; Litigation Reprographics and Support Services, Inc. v. Scott, 599 So.2d 922, 923 (La.App. 4th Cir.1992). Accordingly, we conclude that this assignment of error is without merit.

STIPULATED DAMAGES
In assignment of error three defendants assert that injunctive relief was inappropriate and that the only remedy available to plaintiff was collection of stipulated damages.
In the contract, defendants agreed to forfeit noncompetition payments upon breach of the agreement. Defendants assert that the forfeiture of these payments is stipulated damages and is the exclusive remedy available to Cellular One. Defendants contend that according to La.Civ.Code art. 2007, when stipulated damages are provided for in a contract, no other remedy is available.
Even assuming that the forfeiture of the noncompetition payments constitutes stipulated damages, this case falls under a specific statute, La.R.S. 23:921(G). Subsection (G) specifies that failure of an employee to perform a noncompetition agreement entitles the employer to recover damages and "IN ADDITION, upon proof of the obligor's [employee's] failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement." (Emphasis Added.) After reviewing this statute, we conclude that injunctive relief was an appropriate additional remedy available to Cellular One.

PROOF OF IRREPARABLE INJURY UNNECESSARY
In assignment of error five, defendants assert that Cellular One must set forth evidence of irreparable injury in order to obtain a preliminary injunction for the confidentiality, nondisclosure or nonsolicitation clauses of the agreement. Defendants contend there was no evidence whatsoever showing that they disclosed any confidential information or that they solicited customers. Thus, they conclude that the trial court erred in issuing a preliminary injunction on these issues.
Initially, we note that the injunction issued by the trial court does not refer to the confidentiality or nondisclosure clauses. Thus, we need not discuss these issues. The injunction does however, prohibit defendants from directly soliciting any customer of Cellular One. Thus, we will discuss the validity of that portion of the injunction.
The evidence submitted at the hearing shows that 90% of Boyd's Affordable customers and 73% of Lemoine's customers were former customers of Cellular One. Although several Affordable customers testified that they were not solicited by the defendants, the enormous percentage of former Cellular One customers was sufficient evidence for the trial judge to conclude that the defendants had breached the nonsolicitation portion of the agreement.
The nonsolicitation clause falls squarely under La.R.S. 23:921(G), which provides that upon proof of a breach of the agreement, and without the necessity of proving irreparable injury, the court may issue an injunction. Thus, following proof that defendants breached their agreements not to solicit Cellular One customers, the trial court properly issued the injunction without requiring further proof of irreparable injury.
For these reasons, we conclude that the trial court properly enjoined defendants from soliciting Cellular One customers.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court issuing the preliminary injunction against defendants. *36 Costs of this appeal are assessed against defendants.
AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, J., dissenting.
I do not agree with the result in this case. I would find this noncompetition agreement unenforceable because it lacks mutuality of obligation and because consent was vitiated by economic duress.
The only noncompetition agreement signed by the parties which arguably contained any mutual benefit was the initial one, which was signed in consideration of initial employment. They did not gain anything by signing new more onerous agreementsthey were allowed to hold onto what they already had. Plaintiff did not give up anything at all in consideration for a new agreement. In these economic times, continued employment is not sufficient cause for a noncompetition agreement. It is economic blackmail.
The law of Louisiana never favored noncompetition agreements. The legislative permission to engage in voluntary noncompetition agreements that contain mutual benefit and sacrifice for the parties is permissible. Limited permission to make such a contract, however, does not abrogate the strong public policy against contracts which prohibit an employee from competing with a former employer. The basic premise underlying the prohibition stems from the fundamental right of individuals to seek success in our free-enterprise society. Hawthorn, Waymouth & Carroll v. Johnson, 611 So.2d 645, 656 (La. App. 1st Cir.1992) (Shortess, J., dissenting); Winston v. Bourgeois, Bennett, Thokey & Hickey, 432 So.2d 936 (La.App. 4th Cir.1983). This also is consistent with the policy of at will employment in this state.
I respectfully dissent.
NOTES
[1] Boyd was fired from Cellular One whereas Lemoine resigned.
[2] Defendants cite Orion Broadcasting, Inc. v. Forsythe, 477 F.Supp. 198 (W.D.Kentucky 1979). In Orion, the court relied on principles of mutuality in determining that noncompetition agreements are unenforceable in at will employment situations when the employee is fired. Id. at 201. However, the court went on to note that had Ms. Forsythe, an at will employee, voluntarily severed her employment, the noncompetition agreement would have been enforceable against her. Id.
[3] Boyd was employed from May 17, 1989, through December of 1993. Lemoine was employed from April 20, 1989, through December of 1993.