ROGERS, Circuit Judge.
Plaintiff, Lantech.com, LLC, appeals from the district court’s denial of a preliminary injunction to enforce Lantech’s non-competition agreement with Defendant Curt Yarbrough. The district court, ap *770 plying Kentucky law, found that the “equities disfavor Lantech’s attempt to enforce the non-competition agreement.” Because the district court’s findings of fact were not clearly erroneous, because the single factor discussed in the district court’s opinion was sufficient to support denial of the preliminary injunction, and because the court’s application of Kentucky law to these facts did not constitute an abuse of discretion, the district court’s order is affirmed.
Lantech hired Yarbrough on November 1, 2002. Yarbrough testified that he was “recruited” from his sales position with Xpedx, a Lantech distributor, where Yarbrough had worked as a packaging equipment specialist. Joint Appendix (“JA”) 473-74. Lantech manufactures and sells both commercial packaging equipment and case erecting equipment. JA 125-26. As a condition of employment, Lantech regularly requires all regional sales managers, such as Yarbrough, to sign an agreement not to compete for two years after separation from Lantech in any area where Lantech does business, which is nationally and in some foreign countries. JA 137-38. Yarbrough testified that he was surprised by the non-compete agreement, which was presented to him with his formal offer of employment, because such an agreement was never mentioned during his interviews with Lantech. JA 474. By the time Yarbrough learned of the non-compete agreement, he had already resigned from his former job. Id. Yarbrough testified that he objected to the agreement’s two-year non-compete provision, but ultimately signed the agreement after he was told that “that’s just a matter of doing business with Lantech” and decided that it was acceptable because he “was committing to a life-long relationship” with the company. JA 273.
During the period of his employment at Lantech, Yarbrough held a position as a regional sales manager for Tennessee and states to the south. JA 492. As a sales manager, Yarbrough had access to various information about Lantech’s sales strategies and leads. JA 227-28. From 2002 until his termination in 2006, Yarbrough’s sales performance mei’ited a bonus for all but two quarters, his first and last with the company. JA 476.
In mid-2005, Yarbrough began reporting to a new manager, Kevin Lydon. JA 477. In July 2005, the new manager, the director of sales, and Lantech’s new president all joined Yarbrough for a full day of sales activities in Florida; however, most of the meetings Yarbrough had planned were canceled at the last minute, and Yarbrough did not have backup plans. JA 256-60; 402-04. Subsequently, Yarbrough’s sales figures for the second half of 2005 were below his projected “sales plan.” JA 246. Lydon testified that this was not satisfactory performance for a regional sales manager. JA 387. Lydon also testified that he believed that Yarbrough was “spending a lot of time in his home office” and was not actively engaged in the field. JA 388.
In January 2006, Lydon met with Yarbrough for his annual review. At the review, Yarbrough received a “needs improvement rating,” which he initially protested. JA 254-55. This year-end review was not performed using Lantech’s standard annual evaluation form, which Lantech’s Human Resources (HR) Director agreed in testimony it was “[a] manager’s job to use.” JA 455-56. At the year-end review, Lydon told Yarbrough that his territory had its “best year ever.” JA 437. However, at the same meeting, Lydon told Yarbrough that he was being put on a “performance improvement plan.” JA 438. Under the plan, Yarbrough and Lydon would regularly i’eview Yarbrough’s calendar to con *771 firm that Yarbrough’s sales activities were adequate. JA 266-67. Thirty days into the plan, Lydon reviewed Yarbrough’s progress and noted that Yarbrough’s progress was encouraging and that Yarbrough was demonstrating “motivation” and “passion.” JA 444. Lantech’s HR assistant indicated in her notes that under the performance improvement plan Yarbrough “has had [a] total change in activity level,” and had “taken ownership of getting problems taken care of.” JA 565. Nonetheless, Yarbrough’s first quarter sales numbers were only 66% of his projected sales plan. JA 387. Yarbrough was terminated on April 3, 2006, before his next 30-day review and well before the completion of his 90-day improvement plan period. Lydon testified that Yarbrough was fired because he was “not making an impact out in the field,” because Yarbrough was staying home and had “no activities on the calendar,” and because Yarbrough was staying home for “weeks.” JA 447. However, when presented with Yarbrough’s calendar for March 2006, Lydon admitted that he had no evidence that Yarbrough ever stayed home even two days in a row during the month. JA 447-48.
Lantech’s HR Director testified that it was “abnormal” to fire Yarbrough during the 90-day improvement plan given the results of Yarbrough’s first 30-day review. JA 458. Yarbrough testified that he was fired over the phone, was not given a reason for his filing, was denied a severance package, and had his insurance terminated the next week. JA 277. While it is Lantech’s normal practice to “assist employees who have noncompetes to have a soft landing” by finding them employment with distributors, no assistance was offered to Yarbrough. JA 146-48; 175; 458-59.
Soon after he was terminated by Lantech, Yarbrough contacted a Wexxar-affiliated company to apply for any open positions. JA 543. Wexxar manufactures case erecting equipment. JA 191. Wexxar’s parent company, Pro Mach, also makes and sells other packaging equipment through its affiliated companies. JA 70-71. Wexxar hired Yarbrough as a sales representative for Indiana, Ohio, Kentucky, and Michigan. JA 210. Accordingly, Yarbrough is employed by Wexxar in an area entirely different from the one he had covered for Lantech. However, Lantech does have regional sales managers in each of the states where Yarbrough now works. JA 223-225.
The relevant provisions of the non-compete agreement prohibited Yarbrough from “entering into the employ of ... any [corporation] engaged in the business of designing, manufacturing, selling, or distributing stretch wrapping ... equipment or any other product manufactured or under research and development by Lantech” “[f]or a period of two years following the date of termination of [his] employment with Lantech” “to the extent that [entering into such employment] may result in or may be related to any actual competition with Lantech.” JA 40.
On July 13, 2006, Lantech filed a complaint against Yarbrough, Wexxar, and Pro Mach seeking injunctive relief and damages. JA 8. Lantech requested an order preliminarily enjoining Pro Mach and Wexxar from continuing to employ Yarbrough and preliminarily enjoining Yarbrough from using or disclosing Lantech’s confidential business information. JA 20. The parties consented to have the matter heard by a magistrate judge. The magistrate judge heard two days of testimony on the preliminary injunction motion, after which the district court[1] denied Lantech’s *772 request for an injunction enforcing the non-compete agreement, but granted an injunction enforcing the confidentiality agreement Yarbrough signed with Lantech. In denying Lantech’s request for an injunction enforcing the non-compete agreement, the district court relied on its finding that “equities disfavor Lantech’s attempt to enforce the non-competition agreement,” and in particular on the circumstances surrounding Yarbrough’s termination. The district court’s factual findings included that “Lantech terminated Mr. Yarbrough in a manner which was abrupt, peremptory, and without explanation,” that Lantech’s actions were “in violation of its own employment policies as explained by its vice president for human resources, and in violation of the terms of its ninety day improvement plan for Mr. Yarbrough,” and that Lantech “declined to provide any outplacement assistance [to Yarbrough], in contravention of its normal practice.” JA 47-48. Lantech filed this timely appeal and also sought an injunction pending appeal from this court. Another panel of this court denied the motion for an injunction pending appeal, stating that “a balance of the equities does not support the issuance of an injunction.” Lantech.com v. Yarbrough, No. 06-6488 (January 24, 2007 order).
This court reviews a district court’s denial of a preliminary injunction for an abuse of discretion. Abney v. Amgen, Inc., 448 F.3d 540, 546 (6th Cir.2006). An abuse of discretion occurs when the district court “relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard.” Id. “A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
The district court’s factual determination that Lantech “act[ed] toward Mr. Yarbrough in a way which violates its significant representations to him and its own corporate human resources policy,” JA 49, was not clearly erroneous, and therefore will not be disturbed by this court. Lantech argues that the district court’s characterization of Yarbrough’s termination as “abrupt, peremptory, and without explanation,” JA 47, was clearly erroneous because Yarbrough had been put on notice that his sales performance was not satisfactory and that he could be fired as a result. However, the district court’s finding is supported by uncontradicted testimony that Yarbrough was fired during an unscheduled telephone call, which itself included no explanation of his termination, shortly after receiving a positive 30-day evaluation, and midway through his 90-day improvement plan.
Lantech also argues that the district court’s determination that Yarbrough’s termination was “in contravention of [Lantech’s] own employment policies,” JA 47, was clearly erroneous. However, Larry Hill, Lantech’s HR Director, in his testimony agreed that it was Lantech’s “custom and practice” to evaluate regional sales managers such as Yarbrough using a standard year-end review form that corresponded to another form completed at the beginning of the year outlining the company’s expectations for the employee. JA 453-55. Yet, this form was not used for Yarbrough’s final, pre-termination evaluation. Furthermore, Hill testified that Yarbrough’s termination during the 90-day improvement plan period was “abnormal” given his reported improvement during the *773 first 30 days of the plan. JA 458. Finally, Hill testified that while it was Lantech’s practice to “try and assist employees who have noncompetes to have a soft landing after they leave the company,” he was not aware of any attempt to assist Yarbrough in finding another job after his termination. JA 458-59. These admissions by the director of Lantech’s human resources department sufficiently support the district court’s finding that the circumstances surrounding Yarbrough’s termination were “in contravention of its own employment policies.”
That Lantech had acted inequitably in discharging Yarbrough was a sufficient, “independent ground,” JA 49, for determining that Lantech was not likely to succeed on the merits and denying the preliminary injunction sought by Lantech. The district court therefore did not abuse its discretion in not making findings of fact as to preliminary injunction factors other than likelihood of success on the merits. “To determine whether to grant a preliminary injunction, a district court must consider: ‘(1) the plaintiffs’ likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.’ ” Abney, 443 F.3d at 546 (citation omitted). Rule 52(a) of the Federal Rules of Civil Procedure “provides that in granting or refusing interlocutory injunctions the court shall set forth the findings of fact and conclusions of law which constitute the grounds of its action.” Carpenters’ Dist. Council, etc. v. Cicci, 261 F.2d 5, 7 (6th Cir.1958). This court has said that, even when fewer than all the factors to be considered are determinative of the issue, it is useful for the district court to state its findings as to every factor “since our analysis of one of the factors may differ somewhat from the district court’s.” Leary v. Daeschner, 228 F.3d 729, 739 n. 3 (6th Cir.2000). However, when the district court considers one factor to be significant enough to prevent the injunction from issuing, such additional findings are not necessary. Id. (citing American Imaging Seros., Inc. v. Eagle-Picher Indus., Inc., 963 F.2d 855, 862 (6th Cir.1992)).
Here, the district court held that an “independent ground” supporting its denial of the injunction was that “the equities disfavor enjoining Mr. Yarbrough.” JA 49. It is clear from the district court’s opinion that the equities to which it referred were the “abrupt, peremptory, and [un]explain[ed]” way in which Yarbrough was fired and Lantech’s “harsh actions ... in contravention of its own employment policies.” JA 47. Because the court found it sufficient to rely on Lantech’s inability to succeed on the merits alone, it was not necessary for it to review the other factors normally considered in ruling on a preliminary injunction. Similarly, because, as we discuss below, Kentucky law allows a court to refrain from enforcing a non-compete agreement based on the employer’s inequitable conduct relating to the termination of an employee, the district court was not required to make any other factual findings to support its determination that Lantech was unlikely to succeed on the merits.
Finally, the district court did not abuse its discretion in applying Kentucky law in its determination of likelihood of success on the merits. Lantech’s brief asserts that the district court “applied an erroneous standard for the enforcement of non-competition agreements,” Appellant’s Br. 31, but then offers no explanation of how the court’s articulation of Kentucky law was actually in error.[2] A review of the *774 district court’s summary of Kentucky law regarding covenants not to compete reveals no apparent error, see JA 46 — 47, and, more importantly, the district court correctly articulated the law of equity upon which it principally based its decision to deny Lantech’s request for a preliminary injunction.
The district court concluded its summary of the applicable law with a quotation from Crowell v. Woodruff, 245 S.W.2d 447 (Ky.1951). The district court cited Crowell for the proposition that a court sitting in equity will not grant an injunction to enforce a covenant not to compete when the party seeking the injunction has itself acted unfairly toward the defendant. In Crowell, a production manager at a dry cleaning plant entered into a covenant that he would “not directly or indirectly, either personally or as an employee engage in any dry cleaning business in Owensboro, Kentucky, or in any other place which competes with [the plaintiff-employer] for a period of one year after the termination of this contract except with the written consent of said employer.” Id. at 449. Four-and-a-half months after the execution of the contract including the covenant not to compete, Crowell, the employee-defendant in the case, was fired. Crowell “invoke[d] the cardinal maxim of Clean Hands, or, rather, the related form, ‘He that hath committed inequity shall not have equity’ ” to argue against granting the injunction sought by his former employer. Id. at 450.
The Kentucky Court of Appeals (as Kentucky’s highest court was then called) agreed with Crowell and held that the plaintiff was not entitled to equitable relief because “having exacted the harsh covenant, [the employer] discharged his employee within a brief time.” Id. While the particular facts of Crowell differ from this case, Crowell establishes that a Kentucky court may look to the circumstances in which an employee was discharged in deciding whether to grant an injunction enforcing a covenant not to compete, and may refuse to enforce an otherwise valid agreement if the court finds that the employer discharged the employee unfairly.
As the Seventh Circuit has held in applying Kentucky law regarding non-compete contracts, “[t]he factors applied by Kentucky courts for determining whether a covenant is reasonable are very broad, allowing a good deal of discretion to the district court in making its analysis.” Vencor, Inc. v. Webb, 33 F.3d 840, 845 (7th Cir.1994). It may well be that a reasonable judge could have balanced the equities in this case differently under Kentucky law. But, Lantech has failed to establish that the district court abused its equitable discretion in light of what the court found to be Lantech’s inequitable conduct toward Yarbrough in the manner of his termination.
For the foregoing reasons, we affirm the order of the district court denying a preliminary injunction.

. Because the parties consented to having a magistrate judge conduct the proceedings in *772 the case, this opinion uses the terms "magistrate judge” and “district court” interchangeably. See Tharo Sys., Inc. v. cab Produkttechnik GmbH & Co. KG, 196 Fed.Appx. 366, 368 n. 1 (6th Cir.2006).

. Lantech’s reply brief concedes that “the district court may have 'correctly articulated' Kentucky cases” but questions the “applica *774 tion of these tests and cases to the facts of this case.” Reply Br. 31.